DONNA CRAIN, on Behalf of Herself and Others Similarly Situated, Plaintiff-Appellee, v. LUCENT TECHNOLOGIES, INC., *et al.*, Defendants-Appellants.

Fifth District   No. 5—99—0514

Opinion filed November 14, 2000.

Louis F. Bonacorsi, Ketrina G. Bakewell, and Melissa L. Mitchell, all of Bryan Cave, L.L.P., of St. Louis, Missouri, for appellants.

Stephen M. Tillery and Robert L. King, both of Carr, Korein, Tillery, Kunin, Montroy, Cates & Glass, of East St. Louis, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Lucent Technologies, Inc., and AT&T Corporation (AT&T) (defendants) appeal from an order of the Madison County circuit court denying their motions to dismiss or stay the pending class action suit. On appeal, defendants claim that the circuit court erred in denying their motion to dismiss and alternative motion to stay the proceedings because (1) the plaintiff's action is preempted by federal law, (2) each claim is barred by the voluntary-payment doctrine, and (3) the claims should be referred to the Federal Communications Commission (FCC)

pursuant to the doctrine of primary jurisdiction. Defendants also contend that the circuit court abused its discretion in denying their motion to dismiss brought pursuant to section 2—619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(3) (West 1994)) because there was another action pending between the same parties for the same cause.

A brief summary of the historical background and the facts pertinent to the appeal are set forth as follows. The case comes on the tail end of numerous changes in the telecommunications industry. Advances in computer technology, a conclusion by the FCC that some aspects of the telecommunications industry would thrive on deregulation and free market competition, and the divestiture of the Bell Telephone system contributed significantly to the deregulation in the industry during the 1980s. Prior to the deregulation, telephone companies leased customer-premises equipment to customers who used its telephone services. Customer-premises equipment (CPE) includes telephones, modems, and terminal equipment located inside the customers' homes. Lease charges for CPE were "bundled with" charges for telephone service into one flat fee. According to FCC regulations, the flat fee, referenced in the industry as a "tariff," had to be approved by the state utility commission, the FCC, or both. Once approved, that rate was billed to all customers of that service. Telephone companies could not alter the rate without submitting a proposed new rate to and receiving approval from the authorizing commission.

In the past few decades, a number of vendors, other than telephone companies, began to produce and market telephone equipment with different options and features for sale to the public. Recognizing the increase in competition in the CPE market, the FCC concluded that telephone companies should also lease or sell CPE in a deregulated market. The FCC determined that CPE charges would be separated from the other charges for telephone service and removed from the tariff regulations. In order to accomplish a uniform deregulation of CPE, the FCC directed each state to unbundle and detariff CPE. The goal was to remove the leasing and sales of CPE from the control of the federal and state utility commissions and to allow the competitive market to regulate this product.

In furtherance of this goal, the FCC issued an implementation order that imposed some restrictions and established some requirements on the telephone companies for a period of two years. The FCC determined that a transitional period was necessary in order to ensure that AT&T would not take advantage of its dominant position in the CPE market to arrest the development of competition in that market.

AT&T had acquired all of the residential CPE from the Bell Telephone system as part of the divestiture. The FCC required AT&T to notify customers of their option to continue leasing CPE equipment and required AT&T to offer CPE for sale or lease at set prices in order to ensure price stability during the transition period. The FCC retained jurisdiction over the CPE deregulation and monitored the telephone companies to ensure compliance with its program during this period. The FCC's implementation plan provided that telephone companies would be free from its requirements and restrictions upon the expiration of the two-year transition period. This transition period began with the divestiture of the Bell Telephone system in 1984 and ended in 1986.

In September 1996, Donna Crain (plaintiff) filed a class action suit against defendants, alleging that defendants breached contracts with its customers, violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1994)) and the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 1994)), and owed restitution for money paid on voidable contracts. The gravamen of plaintiff's complaint is that defendants engaged in deceptive, misleading, and contract-breaching practices with respect to the leasing and servicing of CPE.

Defendants filed a motion for judgment on the pleadings in which they argued that the action should be dismissed because it was preempted by federal law and was barred by the voluntary-payment doctrine. Alternatively, defendants argued that the allegations should be referred to the FCC pursuant to the primary-jurisdiction doctrine and the pending case dismissed or stayed. In a separate motion to dismiss brought pursuant to section 2—619(a)(3) of the Code of Civil Procedure, defendants argued that the circuit court should dismiss this case because there were other actions pending that involved the same parties and claims in a federal district court.

On March 10, 1999, the circuit court granted the motion for judgment on the pleadings, finding that the claims were preempted by federal law. Based upon its decision, the court found the remaining issues raised in the motions to be moot and denied them on that basis. Plaintiff filed a motion for reconsideration. Prior to the hearing, the FCC filed an *amicus* memorandum in which it stated that the court erred in inferring that the FCC intended to preempt state consumer-protection and contract laws.

Following a hearing on the motion for reconsideration, the circuit court vacated its prior order and denied defendants' motion for judgment on the pleadings. In its July 2, 1999, order, the court found that plaintiff's claims could be pursued without posing an obstacle to the

FCC's goal of a competitive CPE market and held that the claims were not barred by preemption. Addressing those issues previously denied as moot, the court held that plaintiff's action was not barred by the voluntary-payment doctrine and that the action should not be stayed under the doctrine of primary jurisdiction. The court also denied defendants' section 2—619(a)(3) motion to dismiss.

Before addressing the issues raised by defendants, we will take up plaintiff's motion challenging our jurisdiction to consider those issues in this interlocutory appeal. Plaintiff alleges that this court lacks jurisdiction over the issues raised in point II and point III of defendants' brief because defendants failed to preserve those issues for review and because those issues are not proper subjects for review under Supreme Court Rule 307 (166 Ill. 2d R. 307). In point II, defendants contend that the circuit court erred in vacating its original order granting the motion for judgment on the pleadings on the ground of preemption. In point III, defendants argue that the court erred in vacating its original order granting the motion for judgment on the pleadings on the ground that plaintiff's claims were barred by the voluntary-payment doctrine.

■ The scope of a Rule 307(a) (166 Ill. 2d R. 307(a)) appeal is limited. The only question properly before the court is whether there was a sufficient showing made to the trial court to sustain its order granting or denying the relief sought. *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399, 626 N.E.2d 199, 203 (1993). Rule 307 may not be used as a vehicle to determine the merits of either party's case. *Postma*, 157 Ill. 2d at 399, 626 N.E.2d at 203.

■ In our view, plaintiff's motion as to point III is well taken for two reasons. First, the voluntary-payment doctrine issue is not a proper subject for review under the limited scope of Rule 307(a). The order denying the motion to dismiss on the voluntary-payment issue is not a final order. In this case, a resolution of the voluntary-payment-doctrine issue cannot be obtained at the pleading stage. Defendants have alleged the applicability of the doctrine, but plaintiff has alleged that the payments were not made voluntarily. The resolution of this issue will require the presentation of evidence so that the court or fact finder can determine whether a payment was voluntarily made without protest and without fraud or mistake. Second, the circuit court's decision denying defendants' motion to dismiss on the ground of the voluntary-payment doctrine was not a step in the procedural progression leading to the order granting plaintiff's motion to reconsider and denying defendants' motion for judgment on the pleadings. See *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435, 394 N.E.2d 380, 383 (1979); *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722, 727, 661 N.E.2d 463, 467 (1996). For those reasons, we are

without jurisdiction to review point III of defendants' brief, and we order it stricken.

The preemption issue was the focal point of the July 1999 order from which defendants appeal. In *Kellerman v. MCI Telecommunications Corp.*, the Illinois Supreme Court concluded that the defendant's federal-preemption argument raised the issue of the authority of the trial court to enter the order appealed from and that it was therefore a proper subject on interlocutory appeal. *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 437-38, 493 N.E.2d 1045, 1049 (1986). Similarly, defendants' preemption argument challenges the circuit court's authority to enter any orders in this case. Further, the circuit court's discussion of the preemption issued was a primary and substantial step in the procedural progress of granting the motion to reconsider and denying the motion for judgment on the pleadings. See *Burtell*, 76 Ill. 2d at 435, 394 N.E.2d at 383. For those reasons, we conclude that defendants' preemption argument is within the purview of Rule 307(a) review. We begin with that issue.

■ The preemption doctrine provides that in some instances a federal law will override state laws on the same subject. *Kellerman*, 112 Ill. 2d at 438, 493 N.E.2d at 1049. The doctrine requires courts to examine the federal statute in question to determine whether Congress intended it to supplant state laws on the same subject. *Kellerman*, 112 Ill. 2d at 438, 493 N.E.2d at 1049. Absent explicit preemptive language, courts may infer Congress's intent to preempt where a federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it or where a federal statute touches a subject or an object in which the federal interest is so dominant that the federal system will be assumed to preclude the enforcement of state laws on the same subject. *Kellerman*, 112 Ill. 2d at 438, 493 N.E.2d at 1049, citing *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698, 81 L. Ed. 2d 580, 588, 104 S. Ct. 2694, 2700 (1984).

Even when Congress has not completely displaced state regulation of a specific subject or object, state law is nullified to the extent that it actually conflicts with federal law. *Kellerman*, 112 Ill. 2d at 438-39, 493 N.E.2d at 1049; *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022 (1982). Actual conflicts arise when it is physically impossible to comply with both federal and state regulations or when state law interferes with the accomplishment and execution of the purposes and objectives of Congress. *Kellerman*, 112 Ill. 2d at 439, 493 N.E.2d at 1049; *de la Cuesta*, 458 U.S. at 153, 73 L. Ed. 2d at 675, 102 S. Ct. at 3022.

■ In this case, defendants assert that plaintiff's claims are expressly preempted by the FCC deregulation and implementation

orders. Defendants also argue that plaintiff's claims are impliedly preempted because the FCC has addressed each of plaintiff's claims in those orders and any relief entered would interfere with the FCC's regulatory goal of free-market competition in the sale and leasing of CPE.

The Illinois Supreme Court has previously examined the Federal Communications Act (47 U.S.C. § 151 *et seq.* (1982)) and determined that Congress evidenced no intent to supplant all state regulation of interstate telephone carriers. *Kellerman*, 112 Ill. 2d at 438, 493 N.E.2d at 1049. Defendants do not dispute this point but, rather, argue that provisions in the deregulation and implementation orders preempt plaintiff's claims.

The record demonstrates that defendants' interpretation of the deregulation and implementation orders is at odds with the stated position of the FCC. In a memorandum filed in the circuit court, the FCC advised the court that while it took no position on the merits of plaintiff's claims, those claims were not preempted by the FCC. The FCC explained the limited scope of the deregulation and implementation orders. As part of the deregulation process, the FCC preempted state-tariff regulation of CPE under public-utility statutes, but it did not preempt the application of more general state laws to telephone companies that provide CPE in a competitive market. The FCC memorandum referenced sections of the deregulation and implementation orders which explicitly provided that state consumer-protection and contract law would apply after detariffing. The goals of deregulation were twofold: to protect consumers from excessive costs associated with a combined CPE and transmission tariff and to further competition between carriers and other vendors in the CPE market. The FCC recognized that preempting applicable consumer-protection and contract laws was not necessary to achieve its purposes and would have been inconsistent with its objective of allowing all CPE vendors to compete on an equal basis subject to the same constraints and freedoms.

After reviewing the subject matter of plaintiff's complaint in light of the FCC orders and the FCC memorandum, we conclude that the claims and the remedies sought do not interfere with the FCC's goals and purposes. The FCC clearly intended to sever the sales and leasing of CPE from the transmission services offered by telephone carriers in order to open the CPE market to competition. The FCC did preempt state tariff regulation of CPE under public-utility statutes, but it did not preempt other state consumer-protection and contract laws or otherwise immunize telephone carriers from those laws. The FCC also imposed some restrictions on telephone carriers during the two-year

transition period. Once those restrictions were lifted, CPE charges were regulated by free-market competition. Telephone carriers were subject to the same incentives, rewards, and liabilities as other vendors in the CPE market, including remedies provided by state consumer-protection laws against abusive practices. To the extent that state consumer-protection laws and contract laws applied to the sale or lease of CPE by non-telephone-carrier vendors, they also applied to the telephone carriers.

Defendants maintain that plaintiff's claims have been addressed and resolved by the restrictions imposed in the FCC implementation order. The record does not support defendants' argument. The restrictions referenced by defendants were only in effect during the two-year transition period. Those restrictions were lifted several years before this lawsuit was filed. Plaintiff's complaint challenges conduct and practices that occurred after the restrictions were lifted. Based on this record, we conclude that the claims made and relief sought do not interfere with the FCC's goal to further competition in the CPE market. The trial court correctly concluded that plaintiff's statutory and common law claims were not preempted by the FCC's actions.

■ Defendants also contend that the doctrine of primary jurisdiction required the circuit court to stay this action pending review by the FCC. According to the primary-jurisdiction doctrine, even if a court has jurisdiction over a matter, it should, in some instances, stay the judicial proceedings pending a referral of the controversy, or a portion of it, to an administrative agency. *Kellerman*, 112 Ill. 2d at 445, 493 N.E.2d at 1052; *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 48 L. Ed. 2d 643, 655, 96 S. Ct. 1978, 1987 (1976). Under the doctrine, a matter should be referred to an administrative agency if that agency has special expertise that would help resolve the controversy or if there is a need for a uniform application of administrative standards. *Metropolitan Sanitary District v. United States Steel Corp.*, 30 Ill. App. 3d 360, 367, 332 N.E.2d 426, 431-32 (1975). Conversely, when an agency's technical expertise is not likely to be helpful or there is no need for uniform administrative standards, a court should not relinquish its authority over a matter to the agency. *Kellerman*, 112 Ill. 2d at 445, 493 N.E.2d at 1052; *Nader*, 426 U.S. at 304, 48 L. Ed. 2d at 655, 96 S. Ct. at 1987.

■ After considering the record, including the complaint and the FCC's orders and memorandum, and reviewing the *Kellerman* decision, we do not believe that a referral of plaintiff's claims to the FCC is required by the primary-jurisdiction doctrine. The FCC has already aided in the resolution of the question of preemption. FCC regulations and expertise are not implicated in the remaining issues. Plaintiff's

complaint alleges violations of Illinois consumer-protection statutes and common law claims. It raises no issue requiring the specialized or technical expertise of the FCC. The legal and factual issues presented are standard fare for Illinois circuit court judges. *Kellerman,* 112 Ill. 2d at 445-46, 493 N.E.2d at 1052. Therefore, we find no error in the circuit court's order denying defendants' motions on grounds of primary jurisdiction.

Defendants also argue that the trial court should have dismissed or, alternatively, stayed this action pursuant to section 2—619(a)(3) of the Code of Civil Procedure. Defendants assert that a dismissal or stay is warranted because the pending action involves the "same parties" and the "same cause" as four consolidated actions pending in the United States District Court for the Southern District of Alabama. Defendants contend that such relief is warranted to prevent duplicative litigation, the risk of conflicting results, and the risk of a double recovery for plaintiff.

■ Section 2—619(a)(3) provides that a defendant may move for a dismissal or other appropriate relief if another action is pending involving the same parties and for the same cause of action. 735 ILCS 5/2—619(a)(3) (West 1994). It is designed to avoid duplicative litigation and is to be applied to carry out that purpose. *Kellerman,* 112 Ill. 2d at 447, 493 N.E.2d at 1053; *Speakers of Sport, Inc. v. U.S. Telephone, Inc.,* 149 Ill. App. 3d 898, 501 N.E.2d 318, 322 (1986). The decision to grant or deny such a motion is discretionary and will not be reversed absent an abuse of that discretion. *May v. SmithKline Beecham Clinical Laboratories, Inc.,* 304 Ill. App. 3d 242, 246, 710 N.E.2d 460, 463 (1999); *Kellerman,* 112 Ill. 2d at 447, 493 N.E.2d at 1053. Thus, even when the threshold requirements—"same parties" and "same cause"—are met, section 2—619(a)(3) relief is not mandatory. *A.E. Staley Manufacturing Co. v. Swift & Co.,* 84 Ill. 2d 245, 252, 419 N.E.2d 23, 27 (1980); *Kellerman,* 112 Ill. 2d at 447, 493 N.E.2d at 1053.

■ The factors that should be considered when deciding whether a stay or dismissal is warranted under section 2—619(a)(3) include: comity, the prevention of multiplicity, vexation and harassment, the likelihood of obtaining complete relief in the foreign jurisdiction, and the *res judicata* effect of a foreign judgment in the local forum. *Kellerman,* 112 Ill. 2d at 447-48, 493 N.E.2d at 1053. The court is also required to weigh the prejudice to the nonmovant, if the motion is granted, against the policy of avoiding duplicative litigation. *May,* 304 Ill. App. 3d at 246, 710 N.E.2d at 463.

■ The crux of plaintiff's complaints is defendants' failure to disclose information regarding the options for purchasing and renting

telephone equipment inside the home, defendants' failure to abide by its contractual obligations regarding the condition, leasing, and servicing of CPE, and the unconscionable costs associated with the leasing of CPE. On the surface, the claims made in the cases pending in the federal court seem to be similar to those of the case at bar, and the interests of the parties seem to be similar. See *May*, 304 Ill. App. 3d at 246, 710 N.E.2d at 464. However, that does not end the inquiry, because multiple actions in different jurisdictions, arising from the same set of facts, may be maintained where the circuit court, in its discretion, determines that more than one action should proceed. *Kellerman*, 112 Ill. 2d at 447-48, 493 N.E.2d at 1053.

Both parties concede that the actions pending in the Alabama federal district court have been consolidated for purposes of discovery but not for trial. It is not possible to determine, at this time, whether these cases will be tried in the federal court or returned to the jurisdictions from which they came. Apparently, the federal court has not decided whether a nationwide class should be certified. Both parties agree that the federal court cases are stayed until class certification and other dispositive motions are determined. We have been provided with no definitive timetable for the resolution of those issues.

Considerations of comity, multiplicity, and *res judicata* do not convince us that this class action should be stayed. Although the claims contained in the consolidated actions are similar in many respects, most of those actions also include one or more claims filed pursuant to state-specific consumer-protection laws. Though each case may rely upon some of the same documentary evidence, each case may also require unique documents or witnesses to satisfy the burden of proof in the respective state consumer-protection claims. Thus, the discovery and trial phases of each case may be adversely impacted. According to the record and the arguments of both parties, discovery is much further along in the Illinois case. Based upon the record, the federal court is besieged by motions, and the case is not progressing. In our judgment, both parties can receive a fair and prompt resolution in the Madison County circuit court. For those reasons, we find that the circuit court's refusal to grant a stay, or to dismiss, pursuant to section 2—619(a)(3) was not an abuse of discretion.

Accordingly, the order of the circuit court is affirmed, and the cause is remanded.

Motion to dismiss or, alternatively, to strike granted in part and denied in part; order affirmed; cause remanded.

GOLDENHERSH, P.J., and HOPKINS, J., concur.