# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 02-3795 & 02-3959

AXA CORPORATE SOLUTIONS,

*Plaintiff-Appellant/Cross-Appellee*,

*v.*

UNDERWRITERS REINSURANCE CORPORATION,

*Defendant-Appellee/Cross-Appellant.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 3016—**Joan Humphrey Lefkow**, *Judge.*

_____

ARGUED FEBRUARY 27, 2003—DECIDED OCTOBER 17, 2003

_____

Before KANNE, DIANE P. WOOD, and EVANS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* This case involves dueling lawsuits in Illinois and Texas; our task is to decide whether the federal district court in Illinois should have abstained as a matter of federal law, whether an Illinois statute designed to prevent wasteful and duplicative litigation in the state's courts applies, and whether the proper response is to continue with the Illinois case, to stay the Illinois case, or to dismiss it altogether. Behind all this is the motion picture financing industry—specifically, certain products

called insurance-backed film financing. The participants in this business include the lenders to the film producers, insurers for the lenders, and reinsurers for the insurers. One of those insurers was Underwriters Reinsurance Company (URC), which agreed to insure a five-picture Master Facility to which Chase Manhattan Bank had loaned funds. AXA Corporate Solutions (AXA) agreed to reinsure part of that risk. Acrimony broke out among all parties, which led to a suit brought by AXA against URC in the Northern District of Illinois, and then to a suit by Chase against URC and the reinsurers other than AXA in Texas state court. Later, URC brought a third-party complaint against AXA in the Texas action.

Faced with this mess, URC moved in the Illinois action for a stay or dismissal under the abstention principles set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), or alternatively under 735 ILL. COMP. STAT. 5/2-619(a)(3), an Illinois state statute providing for discretionary dismissal of a complaint if there is another action pending between the same parties covering the same claim. The district court found *Colorado River* abstention inappropriate, but it concluded that the Illinois statute was sufficiently "substantive" that it had to be applied in this diversity case, and moreover that it required the dismissal of AXA's suit against URC. AXA appeals, and URC has cross-appealed from the district court's refusal to order a stay under *Colorado River* in the alternative. We conclude that it was error to dismiss the action based on the state law, but that the district court did not abuse its discretion in concluding that *Colorado River* abstention was inappropriate here. The case must therefore return to the district court for further proceedings.

# I

At the heart of these business arrangements was the motion picture company George Litto Productions. Chase

had loaned money to Litto, and URC issued a Cash Flow Insurance Policy insuring Chase against shortfalls in the repayments of the Litto loans. In 1997, AXA (a French corporation with its principal place of business in Paris, France) entered into a contract with URC (a New Hampshire corporation with its principal place of business in California), in which AXA agreed to reinsure URC for a portion of its obligations under the Cash Flow policy. As part of the deal, Chase and URC insisted that the reinsurers each sign a Loss Payee Endorsement that would permit Chase to collect directly on the policy.

AXA's agreement to reinsure the transaction was made on the express condition that the reinsurance contract would include a provision requiring all disputes to be settled in New York courts under New York law. In order to meet this obligation, URC ideally would have issued its insurance policy in New York. It later learned, however, that it did not have the necessary license to issue policies in New York, and so it proposed to issue the policy in Texas with the inclusion of a provision providing for New York law and jurisdiction. The latter proved to be impossible, after the Texas Department of Insurance informed URC in October 1998 that it would not approve a policy calling for New York law and jurisdiction. Without advising AXA or any other reinsurer of this complication, URC went ahead with the Texas policy, which included a forum selection clause providing for Texas jurisdiction and Texas law. Later, in 1999, URC did the same thing again for a scaled-down film project, once again asking the Texas regulators to approve a clause choosing New York courts and law, and once again settling for a clause choosing Texas courts and law.

AXA found out in late June or early July 1999 that URC had not been forthcoming with it, and that the contracts specified did not have the necessary choice of law and forum clauses. It immediately informed URC that the provisions

calling for Texas law and fora were unacceptable, and it threatened to pull out of the deal. URC urged it to stay, pointing out that the insurers would not face any real risk until the first film was delivered, approximately a year later. During the interim period, URC promised, it would change the state in which the policy was issued to one that would approve the choice of New York. Illinois was one candidate. URC contacted the Illinois Department of Insurance to find out what its position would be; it then represented to AXA that the Illinois authorities would approve a policy calling for New York law and jurisdiction. AXA agreed to go forward on the condition that URC promptly file in Illinois, use its best efforts to obtain clauses choosing New York law and New York courts, or, failing that, Illinois law and Illinois courts. URC agreed to all of this, both orally and in writing. But in the end it refused to make the promised refiling in Illinois and instead contacted AXA and demanded that AXA accept a number of alterations to the contract required by a side agreement URC had arranged with Chase in the meantime. When AXA refused to agree to these revisions, the lawsuits began.

In October 1999, AXA sued Chase in New York state court seeking a declaration that it was not liable to Chase for any losses relating to the secured loans. The case was then consolidated with a similar action Chase had brought against AXA. Things did not go well for AXA: Chase ultimately won a declaration that AXA *was* in fact on the hook for the secured loans, and a New York state appeals court affirmed, *Chase Manhattan Bank v. AXA Reinsurance*, 741 N.Y.S.2d 867 (N.Y. App. Div. 2002). On April 26, 2002, AXA brought this case against URC in the Northern District of Illinois, seeking rescission of the contract, a declaratory judgment that URC was liable for any losses sustained by Chase, and damages. On the same day, Chase sued URC and several other reinsurers (but not AXA) in Texas state court. URC responded with, among other things, a third-party complaint against AXA. URC then asked the Illinois

district court for a stay or dismissal under *Colorado River* or under § 2-619(a)(3), the Illinois statute that authorizes dismissal where "there is another action pending between the same parties for the same cause." The district court refused to abstain under *Colorado River*, but it granted URC full dismissal under § 2-619(a)(3).

## II

Because the district court's ruling under § 2-619(a)(3) had the effect of disposing of the entire case, we begin with the question whether that ruling was correct. If so, AXA's case in Illinois is at an end; if not, the question remains whether *Colorado River* abstention was proper, or if the case should proceed despite the existence of the parallel Texas action. The relevant portions of § 2-619(a)(3) read as follows:

> Involuntary dismissal based upon certain defects or defenses. (a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds.
>
> \*\*\*
>
> (3) That there is another action pending between the same parties for the same cause.

735 ILL. COMP. STAT. 5/2-619(a).

In deciding a § 2-619(a)(3) motion, Illinois courts consider a range of factors that closely resemble those that a federal court would consider under *Colorado River* (which we discuss in more detail below). These include "comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum." *May v. SmithKline Beecham Clinical Labs., Inc.*, 710 N.E.2d 460, 463 (Ill. App. Ct. 1999). Illinois state courts also evaluate whether the case bears a "legiti-

mate and substantial relation to Illinois." *A.E. Staley Mfg. Co. v. Swift & Co.*, 419 N.E.2d 23, 27 (Ill. 1980). In most cases, the analysis comes down to a simple weighing of "the prejudice to the nonmovant if the motion is granted against the policy of avoiding duplicative litigation." *Kapoor v. Fujisawa Pharm. Co.*, 699 N.E.2d 1095, 1100 (Ill. App. Ct. 1998); see also *Crain v. Lucent Techs., Inc.*, 739 N.E.2d 639, 647 (Ill. App. Ct. 2000). Moreover, in contrast to the "unflagging obligation" of district courts to exercise jurisdiction and also the "exceptional" nature of the entry of a stay under *Colorado River*, 424 U.S. at 813, 817, the dismissal provisions of § 2-619(a)(3) "should be construed liberally." *Vill. of Mapleton v. Cathy's Tap, Inc.*, 729 N.E.2d 854, 856 (Ill. App. Ct. 2000).

The overriding issue is whether this statute, which relates so closely to the use to which Illinois wishes to put its courts, is the kind of law that a federal court sitting in diversity must apply, or if it is sufficiently procedural in nature that the federal court must turn instead to the analogous federal rules. This is often referred to as the distinction between "substantive" issues and "procedural" issues in cases applying the doctrine first announced in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), although both those terms should be understood as shorthand for a more complex inquiry. That inquiry requires courts to refer to the twin aims of the *Erie* doctrine, which are to discourage forum-shopping and to avoid the inequitable administration of laws. See generally *Houben v. Telular Corp.*, 309 F.3d 1028, 1032-36 (7th Cir. 2002) (collecting cases); see also *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Hanna v. Plumer*, 380 U.S. 460, 468 (1965); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 536-37 (1958); *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).

There can be no doubt that both § 2-619(a)(3) and the *Colorado River* doctrine address the general problem of

duplicative litigation. Under *Colorado River*, a federal court may stay or dismiss a suit when there is a concurrent state court proceeding and the stay or dismissal would promote "wise judicial administration." 424 U.S. at 818. Substantially the same parties must be litigating the same issues contemporaneously in the two (or more) fora. (It may be worth noting that the federal courts do not face the same problems if the parallel litigation is in another federal court, because devices such as 28 U.S.C. § 1404(a) and 28 U.S.C. § 1407 exist for the total or partial consolidation of related cases from different districts.) *Colorado River* then goes on to outline numerous factors that the court should consider as it weighs what step is appropriate for the particular situation.

Section 2-619(a)(3) addresses precisely the same problem. The choice Illinois has made, however, is different from the choice the federal courts have made. For example, the dismissal provisions of the state statute are construed liberally, while the Supreme Court has made it clear that *Colorado River* abstention must be reserved for exceptional circumstances. 424 U.S. at 813. This difference would give rise to substantial variation in outcomes between federal and state litigation, which might suggest that § 2-619(a)(3) should be applied by a federal court in a case governed by state law, in order to avoid forum shopping. See *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001); Guar. Trust, 326 U.S. at 109-10.

AXA argues that a determination that § 2-619(a)(3) is inapplicable in federal court will not reduce the total amount of forum shopping in the system as a whole, but will merely shift forum shopping from the "vertical" (between federal and state courts) to the "horizontal" (among federal courts). We are not so naive as to believe that lawyers will not try to exploit whatever differences they may perceive among the federal circuits at any given time. Nevertheless, those differences are ultimately subject to

reconciliation by the Supreme Court, if they are not cured by the transfer devices that exist or through the rule-making process. Differences that are attributable to the duty of federal courts to follow state law, under the Rules of Decision Act, 28 U.S.C. § 1652, will induce only the vertical form of forum shopping.

The district judge was not alone in finding that the differences between *Colorado River* abstention doctrine and § 2-619(a)(3) are sufficient to require the federal court to follow the state statute, just as it would follow a state rule prescribing damages for a breach of contract. Many district judges have arrived at the same conclusion, see *Praxair, Inc. v. Slifka*, 61 F.Supp.2d 753, 758 (N.D. Ill. 1999); *Brach & Brock Confections, Inc. v. Redmond*, 988 F.Supp. 1106 (N.D. Ill. 1997); *Northbrook Prop. & Cas. Ins. Co. v. Allendale Mut. Ins. Co.*, 887 F.Supp. 173 (N.D. Ill. 1995); *Ball v. Deere & Co.*, 684 F.Supp. 1455 (C.D. Ill. 1988), although not all have done so, see *Basic v. Fitzroy Eng'g, Ltd.*, 949 F.Supp. 1333 (N.D. Ill. 1996); *Fofi Hotel Co., Inc. v. Davfra Corp.*, 846 F.Supp. 1345 (N.D. Ill. 1994); *W.E. O'Neil Const. Co. v. Nat'l Union Fire Ins. Co.*, 721 F.Supp. 984 (N.D. Ill. 1989). But not everything that might lead to forum-shopping requires the application of state law. Parties might prefer the notice-pleading regime of the Federal Rules of Civil Procedure over the fact-pleading approach that prevails in Illinois courts, but no one thinks that the Illinois rules of pleading are binding on the federal courts. As long as Rule 8 of the Federal Rules of Civil Procedure is a valid rule under the Rules Enabling Act, 28 U.S.C. § 2072 (and we have no reason to question it), *Hanna* makes it clear that the federal court must follow the federal rule. Venue rules, jury rules, discovery rules, and countless other procedural rules that are found in the federal Constitution, statutes, and rules, also influence forum choice. Even so, ever since Congress repealed the Conformity Act, it has been un-

derstood that the federal courts are entitled to make their own choices about the ways in which cases will proceed.

In our view, the problem addressed by § 2-619(a)(3) is closely akin to topics such as forum non conveniens, lis pendens, and venue statutes. Each of those areas addresses an organizational matter that is governed by the law of the sovereign that established the forum. In the case of a federal court, that sovereign is obviously the United States. We see no way for a federal court simultaneously to follow the Supreme Court's *Colorado River* doctrine and to apply the rule of § 2-619(a)(3). Given that conflict, and given the procedural nature of this problem, we conclude that the state statute should not have played any role in the decision whether to retain or dispose of this litigation. We naturally express no opinion on the question whether the facts of this case would have merited dismissal under § 2-619 (a)(3).

## III

Because it was error to dismiss this case based on the state statute, we must consider whether the district court should have abstained under *Colorado River.* As we have already noted, a federal court may stay or dismiss a suit when there is a concurrent state proceeding and the stay or dismissal would promote "wise judicial administration." *Colorado River*, 424 U.S. at 818. The two suits at issue must be parallel, meaning that "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Caminiti & Iatarola, Ltd. v. Behnke Warehousing Inc.*, 962 F.2d 698 (7th Cir. 1992) (internal quotation marks and citations omitted). Once that determination has been made—and in this case, the "parallel" requirement is undisputed by the parties—a court must take ten separate factors into consideration in deciding whether or not to abstain:

(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Id.* at 701 (quoting *LaDuke v. Burlington N. R.R.*, 879 F.2d 1556, 1559 (7th Cir. 1989)). Although the sheer number of factors to be considered creates the risk of unpredictable and inconsistent results, the Supreme Court has effectively told courts how those factors should be weighed. It has cautioned that abstention is appropriate only in "exceptional circumstances," *Colorado River*, 424 U.S. at 813, and has also emphasized that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *id.* at 817. Following this guidance, we have recognized a general presumption against abstention. *Sverdrup Corp. v. Edwardsville Cmty Unit Sch. Dist. No. 7*, 125 F.3d 546, 549-50 (7th Cir. 1997).

We review the district court's conclusion that abstention was inappropriate for abuse of discretion. *Id.* at 548-49. The court thought that at least seven of the ten *Colorado River* factors were either absent or otherwise weighed against abstention. It observed that the dispute between AXA and URC does not involve property over which the court has exercised jurisdiction (factor 1); that the state and federal actions at issue were filed on the same day (factor 4); that no rights of AXA as the federal plaintiff will go unprotected in the event of a stay (factor 6); that the federal proceedings had progressed farther than the Texas proceedings (factor 7); that the state and federal courts possess concurrent ju-

risdiction over the dispute (factor 8); that AXA, as a third-party defendant, has no removal option (factor 9); and that there was no evidence of vexatious motive (factor 10). Only three factors pointed in favor of abstention; these were the source of the governing law (factor 5), the inconvenience of the federal forum (factor 2), and the desirability of avoiding piecemeal litigation (factor 3). The district court found that the fact that only state-law claims were at issue did not carry much weight, because it had jurisdiction in any event because of the diversity of the parties. As to the latter two factors, the court concluded that "because the Texas Action is more comprehensive and because Illinois lacks connection to this case, the court is persuaded that Illinois is not a more convenient forum than Texas." The district court concluded that these concerns were simply not enough to constitute "exceptional circumstances," and refused to enter a stay.

The district court's careful consideration of the *Colorado River* factors is entitled, in a sense, to double deference, once we apply both the abuse of discretion standard of review and the presumption against abstention that the Supreme Court established in *Colorado River*. The court was aware that there are powerful reasons for giving precedence to the Texas proceeding: all the parties are there, in one capacity or another, and there is no special expertise an Illinois federal court can bring to bear that would outweigh the efficiencies inherent in the ability to consider the case as a whole. Yet that cannot be enough; otherwise, the Court would not have stressed the "unflagging obligation" of the federal courts to hear cases properly before them.

What AXA will lose if the Illinois federal case is stayed or dismissed is the opportunity to litigate in a federal forum—an opportunity to which it is entitled under 28 U.S.C. § 1332, in the absence of extraordinary circumstances. Moreover, it is hard to see what more AXA could have done to make it clear that it was not consenting to litigate in

Texas. It may be true that the traditional justification for diversity jurisdiction—protecting foreign companies from potentially biased state courts—is weak on these facts. See *Guar. Trust*, 326 U.S. at 111-12; *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 991 (7th Cir. 2001). AXA is a French company with its principal place of business in Paris; URC is a New Hampshire corporation with its principal place of business in California. Neither party is a citizen of Texas, and there is no particular reason to think that the Texas courts will be predisposed to favor one outsider against another. On the other hand, diversity litigants are not second-class citizens, see *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir. 1982) ("[W]e are not free to treat the diversity litigant as a second-class litigant."). Nor has the Supreme Court interpreted § 1332 in a way that requires a finding of potential prejudice in state court before federal court jurisdiction will be sustained.

In the end, this case turns on how seriously we take the admonition from the Supreme Court not to stay or dismiss actions without strong justification to do so. In that spirit, we can see no reason to disagree with the district court's ultimate conclusion rejecting *Colorado River* abstention. This is not, we stress, because we have any lack of confidence in the ability of the Texas courts to conduct a full and fair adjudication of the issues, including the choice of law issue. AXA has insinuated that the Texas courts will not live up to this standard, but this is pure speculation that we expressly disavow. See *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 900 & n.4 (7th Cir. 1999) (noting that the district court was entitled to conclude that the courts of another forum are equipped to resolve the dispute at issue). Nonetheless, AXA properly filed this case in federal court, and it is entitled to its federal forum. Should the Texas court complete its proceedings first, the parties will undoubtedly call that to the district court's attention and consider whether the doctrine of issue preclusion applies.

## IV

We REVERSE the district court's dismissal of AXA's action and REMAND for further proceedings consistent with this opinion.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*