# In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――

No. 04-3819

TRUSERV CORPORATION,

*Plaintiff-Appellee,*

v.

FLEGLES, INC. and
ALICE MAE FLEGLE,

*Defendants-Appellants.*

―――――――

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 3284—**Samuel Der-Yeghiayan**, *Judge.*

―――――――

ARGUED APRIL 14, 2005—DECIDED AUGUST 12, 2005

―――――――

Before COFFEY, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* This case arises out of a twenty-year relationship between the owners of a hardware store and the wholesaler with which they worked. Flegles, Inc. ("Flegles"), owned and operated a True Value hardware and lumber store in Bardwell, Kentucky. By becoming a member of the TruServ cooperative, Flegles was able to use the True Value trademark and to benefit from group buying power and group billing procedures. On January 20, 2000, Flegles and TruServ executed an updated written agreement ("the

member agreement"), in which Flegles agreed "to pay on the date due all invoices on accounts receivable statements," and to immediately pay all amounts due upon termination as a member. During the next three years, Flegles purchased merchandise and services from TruServ pursuant to the member agreement. TruServ also advanced cash to Flegles for the purpose of making improvements to the store. Additional contracts were executed to secure these advances in which Flegles agreed to maintain an acceptable credit history and to remain a member in good standing of TruServ. If Flegles ceased to be a member in good standing, the debt would be considered defaulted and Flegles would be required to repay the advances immediately.

In addition to the contracts between Flegles and TruServ, Alice Mae Flegle signed three personal guaranty agreements. By the terms of these agreements—signed March 25, 1976, May 4, 1976, and December 13, 1982— Alice Mae Flegle personally guaranteed the payment of any debt owed to TruServ by Flegles. In 1991, TruServ requested that these personal guaranties be replaced with a new guaranty, but the President of Flegles, Mark Flegle, denied the request.

Although Flegles did accept equipment and services from TruServ, and TruServ sent monthly invoices and a written demand for payment in November 2002, Flegles did not repay its debt. Instead, on February 12, 2003, Flegles filed a lawsuit against TruServ in Kentucky state court. A few days later, TruServ terminated Flegles's membership for nonpayment. At that point, repayment of the money TruServ had advanced to Flegles became immediately due.

In the Kentucky action, Flegles alleged that TruServ made fraudulent misrepresentations in order to induce Flegles to continue as a member and to encourage Flegles to go into substantial debt to expand and make improvements to the store between 1997 and 2000. Flegles also alleged that the January 2000 execution of the member agreement was fraudulently induced. Flegles asked the

court to issue a declaratory judgment and to find that the agreements between the parties are null and void because of fraud and breach of contract. TruServ filed a motion to dismiss based on the forum selection clause in the member agreement which stated that any disputes should be litigated in or near Cook County, Illinois. The Kentucky court denied the motion, stating that litigating in Chicago would be inconvenient for Flegles and noting a disparity in bargaining power between the parties. The case went to trial and, on July 30, 2004, the jury returned a verdict in favor of Flegles, finding that TruServ was liable for $1.3 million in damages.

On May 16, 2003, after the commencement of the Kentucky litigation, TruServ filed a diversity action in the Northern District of Illinois. Through the lawsuit, TruServ attempted to collect the debt it was owed either from Flegles (the corporation), or from Alice Mae Flegle personally. Over objections from Flegles, the district court found that it could exercise its jurisdiction in spite of the Kentucky lawsuit, and that abstention was not necessary or proper in this case. The court also found that Alice Mae Flegle had submitted to personal jurisdiction in Illinois. After a grant of summary judgment in favor of TruServ and additional briefing on damages, the court ordered Flegles to pay $143,546.77 in damages, fees, and costs to TruServ.[1] Flegles and Alice Mae Flegle appeal. We affirm.

### I. Alice Mae Flegle's Personal Guaranty

We begin with a discussion of whether Alice Mae Flegle has submitted to personal jurisdiction in Illinois. We review *de novo* the district court's decision regarding personal

---

[1] The breakdown of the total award is as follows: $77,149.27 in damages; $5,143.28 in prejudgment interest; $50,374.50 in attorneys' fees; and $10,879.72 in costs.

jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Ms. Flegle argues that the court below should have granted her motion to dismiss because TruServ could not prove that she had the requisite "minimum contacts" with Illinois, and thus haling her into an Illinois court would offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

It is true that Ms. Flegle had limited contact with Illinois during her dealings with TruServ. It is also true that simply contracting with a party based in Illinois is not enough to establish the required minimum contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). However, another very important consideration in this analysis is that "personal jurisdiction is waivable and that parties can, through forum selection clauses and the like, easily contract around any rule we promulgate." *RAR*, 107 F.3d at 1280 (citing *Burger King*, 471 U.S. at 472 n.14).

Ms. Flegle signed a personal guaranty agreement promising to "guarantee absolutely and unconditionally, at all times, the payment unto you of any indebtedness or balance of any past, present or future indebtedness, from [Flegles]." The guaranty goes on to state that "[t]his guaranty is made under the laws of the State of Illinois and shall be controlled by and interpreted according to the laws of said state. If suit becomes necessary [TruServ is] authorized to file suit against [Alice Mae Flegle] in any court of competent jurisdiction in the State of Illinois."

Ms. Flegle argues that there is no "court of competent jurisdiction" in Illinois because she does not have sufficient minimum contacts with the state. We find this argument to be meritless. Ms. Flegle signed a valid forum selection clause, and "[o]bviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4

(7th Cir. 1989). Ms. Flegle is deemed to have waived her objection to personal jurisdiction. *See Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990).

Next, Ms. Flegle claims that there is a material issue of fact as to whether the guaranty agreement covered the entire debt owed by Flegles. The agreement mentions "goods, wares and merchandise" and discusses "credits." Loans, Ms. Flegle argues, are not included in the agreement and thus are not personally secured.

The personal guaranty agreement as a whole, however, makes it very clear that Ms. Flegle is personally liable for "any indebtedness or balance of any past, present or future indebtedness." The agreement specifically states that "[i]t is the intention of this guaranty to assure [TruServ] of payment, in full, for any amount due" from Flegles.

The fact that Mark Flegle refused to execute a new personal guaranty in 1991 does nothing to change this analysis. The guaranty signed by Ms. Flegle "may only be revoked upon written notice." In fact, the personal guaranty continues in effect even upon the death of Ms. Flegle. Neither party alleges that the guaranty was revoked by written notice. Therefore, the guaranty is still in effect and Ms. Flegle is personally liable for the entire debt owed by Flegles to TruServ.

We briefly address the claim raised by Flegles that because TruServ refused to exercise certain setoff rights, it failed to mitigate its damages. Flegles owned TruServ stock at the time its membership was terminated, and it argues that TruServ should have set off the value of the stock against Flegles's account as it was contractually permitted to do. Flegles claims that there is a material issue of fact as to whether TruServ breached its duty of good faith and fair dealing with respect to this issue and that granting summary judgment was therefore improper. We find that although TruServ had a right to set off, it was not obligated

to do so. A contract between the parties explicitly stated: "In addition to all rights of TruServ under such membership agreement, [Flegles] agrees that TruServ may, but is not required to, set off any obligations hereunder against any stock or notes issued or to be issued to [Flegles] by TruServ." There is no material issue of fact here.

## II. The *Rooker-Feldman* Doctrine

Flegles contends that the district court did not have subject matter jurisdiction to hear this case. The *Rooker-Feldman* doctrine precludes jurisdiction here, it is argued, because federal district courts are not permitted to review the decisions of state courts. *See Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996); *see also D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Flegles claims that because the Kentucky court found the forum selection clause to be invalid, and jurisdiction in Illinois is based on the clause, TruServ's federal claim impermissibly seeks to have the district court set aside the state court judgment. Even if TruServ is not seeking outright reversal of the state court's ruling, Flegles argues, the federal claims are at least "inextricably intertwined" with the Kentucky ruling. *See Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004). Whether a claim is inextricably intertwined "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Id.*

Flegles hopes for a broad reading of the *Rooker-Feldman* doctrine which would allow the Kentucky court's ruling on the forum selection clause to control the federal case. However, a recent Supreme Court opinion discussed the scope of the doctrine and held that it has an extremely limited applicability: it applies only to "cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-22 (2005). The district court retains subject matter jurisdiction even if the claims brought in both cases are the same. *See id.* at 1526-27. "This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quotations and citations omitted).

TruServ filed its complaint in the district court about three months after Flegles filed its Kentucky claim. The state court judgment was rendered more than 14 months after the district court action began. Therefore, under the Supreme Court's recent ruling, the *Rooker-Feldman* doctrine is not applicable to this lawsuit because the Kentucky court's judgment was not rendered before the district court proceedings commenced. *See id.* at 1521-22. The doctrine only applies to cases like *Rooker* and *Feldman* where "the losing party in state court filed suit in federal court *after the state proceedings ended*"; therefore, an interlocutory ruling does not evoke the doctrine or preclude federal jurisdiction. *Id.* at 1526 (emphasis added). Even though the Kentucky court had denied TruServ's motion to dismiss based on the forum selection clause before TruServ filed its federal suit, the district court may still properly hear the case as long as TruServ "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . ." *Id.* at 1527 (citing *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). We find that the collection claim TruServ filed in federal court alleging breach of the member agreement is independent of the tort claims brought by Flegles in Kentucky. The injury TruServ attempted to remedy in its district court action was the

result of Flegles's failure to pay for goods and services for which TruServ had demanded payment before Flegles initiated the Kentucky lawsuit; the injury did not arise from the Kentucky lawsuit. The district court did not need to set aside a state judgment in order to rule on TruServ's claims. Thus, the *Rooker-Feldman* doctrine does not preclude federal jurisdiction in this case.

This determination does not end the matter, however. It is still possible that "[c]omity or abstention doctrines, may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Id.* This leads us to our discussion of the *Colorado River* doctrine.

### III.  The *Colorado River* Doctrine

Flegles argues that the district court should have abstained from hearing the case and "await[ed] the outcome of parallel proceedings as a matter of 'wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'" *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The Supreme Court, however, "has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (internal citations omitted). So, in determining whether abstention is appropriate, our task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to

justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original).

In order to decide whether the *Colorado River* doctrine applies to a particular case, we must first determine whether the concurrent state and federal lawsuits are parallel. *See Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). If the cases are found to be parallel, the next task is "to balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure."[2] *Finova*, 180 F.3d at 898. However, if the two cases are not parallel, the *Colorado River* doctrine does not apply. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). The lawsuits need not be identical to be considered parallel; "[s]uits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Id.* (internal quotations omitted). "The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *Id.* (internal quo-

---

[2] Ten factors may be considered in deciding whether the circumstances are exceptional enough to support a stay:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Caminiti & Iatarola*, 962 F.2d at 701.

tations omitted). "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction . . . ." *Id.* at 520. Whether the cases are parallel is a legal issue that we review *de novo. Id.* at 518.

The district court did not devote much discussion to whether the actions were parallel. In finding that the cases are "sufficiently related to be considered parallel," the court relied on the fact that the cases arise out of the same relationship and that TruServ's claims in the federal lawsuit could be considered compulsory counterclaims in the Kentucky action. The court did not address whether there is a substantial likelihood that the Kentucky litigation will dispose of all of the claims TruServ raised in the district court.

The jury in the Kentucky case found that TruServ made material representations to Flegles which caused Flegles to expand its store, and also that Flegles would not have signed the 2000 membership agreement had it not been fraudulently induced to do so by TruServ. The jury awarded $1.3 million to compensate Flegles for profits it lost because of the misrepresentation. But, because TruServ did not raise its collection claims in the state court, the jury did not decide whether the amount Flegles owed for the goods and services it received from TruServ should be subtracted—in part or in full—from the compensatory damages award. Also, the state court did not consider the enforceability of Alice Mae Flegle's personal guaranty because Ms. Flegle was not a party to the state court lawsuit.

Flegles insists that because TruServ's federal claims were compulsory counterclaims in the Kentucky action, these claims should have been "disposed of" already and therefore cannot lead to the conclusion that the cases are not parallel. *See AAR*, 250 F.3d at 522 (explaining and rejecting the argument that a compulsory counterclaim would be " 'dis-

posed of' one way or another . . . [because] it would either be asserted as a counterclaim in the foreign action and decided there, or lost if not asserted before the conclusion of the foreign action. Either way, conclusion of the foreign action would leave nothing left for the federal court to decide."). However, "no authority . . . suggest[s] that a federal action is parallel to a state or foreign action for *Colorado River* abstention purposes when the claim upon which the federal action is based is pleadable as a compulsory counterclaim in the other action." *Id.*

"In the end, this case turns on how seriously we take the admonition from the Supreme Court not to stay or dismiss actions without strong justification to do so." *AXA*, 347 F.3d at 279. We again emphasize the remarkably difficult standard that must be met before we can refuse our "virtually unflagging obligation" to exercise jurisdiction. *See Colorado River*, 424 U.S. at 817; *AAR*, 250 F.3d at 520 (noting that "any doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction"). "If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR*, 250 F.3d at 518 (internal quotations omitted).

Taking into consideration the foregoing, we find that TruServ's collection claims were not resolved in the Kentucky lawsuit. While it is true that TruServ chose not to raise the claims in the state court, that is not dispositive. The fact is that the state court litigation did not dispose of all the claims presented in the federal case; therefore, we must find that the two cases are not parallel. Because the cases are not parallel, we need not balance the *Colorado River* factors. *Id.*

## IV.  Attorneys' Fees

The member agreement between the parties states that "[i]n the event that [TruServ] initiates proceedings to recover amounts due it by [Flegles] or for any breach of this Agreement or to seek equitable or injunctive relief against [Flegles], [TruServ] shall be entitled to the recovery of all associated costs, interest and reasonable attorney's fees." According to the terms of this clause, the district court awarded $5,143.28 in prejudgment interest, $50,374.50 in attorneys' fees, and $10,879.72 in costs to TruServ. We review a district court's award of fees and costs for abuse of discretion. *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 561 (7th Cir. 2000).

Flegles argues that the fees and costs awarded were excessive and that TruServ took additional risks and drove up its expenses because Flegles was contractually obligated to pay the fees and costs. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999). However, TruServ properly provided detailed billing records, and whether fees are to be deemed "excessive is a matter of opinion, and . . . it is the district court's opinion that matters." *Harter*, 220 F.3d at 562. We also note that "[c]ourts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it *is* market value." *Balcor Real Estate Holdings v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) (emphasis in original). The district court did not abuse its discretion in awarding fees and costs to TruServ.

## V.  Conclusion

For the reasons set forth in this opinion, we AFFIRM the district court's decision to reject abstention, although we find that the appropriate rationale for this decision is that the two cases are not parallel. We also AFFIRM the district

court's award of attorneys' fees and costs. We further REMAND for a determination, consistent with this opinion, of the amount of fees and costs expended in this appeal that are properly owed to TruServ.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*