In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-1602

MARVIN F. TYRER,

*Plaintiff-Appellant*,

*v.*

CITY OF SOUTH BELOIT,
ILLINOIS,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 C 50353—**Philip G. Reinhard**, *Judge*.

———————

ARGUED JANUARY 4, 2006—DECIDED AUGUST 2, 2006

———————

Before CUDAHY, RIPPLE and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge.* In August 2004, Marvin Tyrer brought this action against the City of South Beloit, Illinois ("City"). He alleged that the City demolished his house without affording him due process of law. In October 2004, the City filed a motion asking the district court to dismiss the action or, in the alternative, to abstain in light of pending parallel state court proceedings. The district court denied the City's motion to dismiss, but granted the motion to abstain pending final disposition of the state court action. *See Colorado River Water Conservation Dist. v. United States*,

424 U.S. 800 (1976). Mr. Tyrer now appeals this decision. He submits that the court abused its discretion in determining that his federal and state actions are parallel proceedings and that his case presents an "exceptional circumstance" that warrants invocation of the *Colorado River* abstention doctrine. *Id.* at 813 (internal quotation marks omitted). For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

In September 1997, Mr. Tyrer purchased residential property in the City of South Beloit, Illinois.[1] The house on this property was built in the early 1900s, prior to the enactment of city ordinances regulating minimum lot size and mandating a front-yard setback. Additionally, after the house was built, the City adopted a Flood Plain Ordinance, which imposes minimum elevation requirements. Although the house does not comply with these regulations, it was deemed by the City to be a "legally non-conforming structure" because it lawfully existed prior to the passage of the ordinances. App. at 12.[2]

The City's zoning ordinances provide that, if a legally non-conforming structure is damaged, destroyed or changed to an extent of 50% or more of its replacement

---

[1]  The address of this premises is 531 Hayes Avenue, South Beloit, Illinois; it also is described as Lot 15 in Block 1 of the Hayes Addition to the City of South Beloit.

[2]  Because of the disorganized and incomplete state of the record, we shall refer to the Appellant's Appendix.

value, it no longer is exempted from current zoning laws. Under these circumstances, the owner must apply for a variance. *See* South Beloit, Zoning Ordinance, Art.V, § 505, Damage and Destruction; *id.,* Art.XVI, Variation. Shortly before Mr. Tyrer purchased the property, its previous owner applied for a petition for variance in order to remodel the house, to construct a 20′ x 14′ addition to the house, and to construct a 20′ x 20′ non-attached garage. The Zoning Board of Appeals of South Beloit heard testimony on November 11, 1996, and voted to grant the variance; it found that the remodeling, the addition to the home and the garage would improve the appearance of the property.[3]

When Mr. Tyrer purchased the property in September 1997, no work yet had begun on these projects. With the intent of carrying out the previous owner's building plans, Mr. Tyrer applied for and obtained the required building permit from the Winnebago County Building Department in April 1998. According to the permit, the garage, as a new structure, had to be built at an elevation of 741.5 feet, 1 foot above the 100-year flood level. This requirement also applied to the 20′ x 14′ addition; thus, Mr. Tyrer was required to raise the existing structure by 4.5 feet.

Construction began in the spring or summer of 1998; Mr. Tyrer installed the walls, footings and foundation for the addition, as well as the garage floor. According to Mr. Tyrer, he was approached by John Hunt of the Winnebago County Building Inspector's Office in May or June 1998. Hunt informed Mr. Tyrer that, to be in com-

---

[3] To comply with relevant city ordinances, the prior owner was required to obtain an elevation survey, which was completed in December 1996.

pliance with city ordinances, he would have to obtain additional fill for the purpose of covering the garage footings by ten inches above the frost line. Mr. Tyrer complied with this request. However, when Hunt returned to Mr. Tyrer's property in November 1998, he noticed that the additional fill was causing excess run-off and that Mr. Tyrer had exceeded the scope of his work permit.

The City Clerk issued a cease and desist order in November 1998. This order stated that the construction violated the Flood Plain Ordinance and exceeded the scope of Mr. Tyrer's work permit. Mr. Tyrer protested the order; the parties attempted to resolve their differences amicably; these efforts were not successful. Mr. Tyrer thereafter halted construction. Since November 1998, no additional work has been done on the property.[4]

Notice of demolition was issued by the City to Mr. Tyrer on January 4, 2000, pursuant to 65 ILCS 5/11-31-1.[5] Sub-

---

[4] Additional work on the property may not commence until a variance is granted by the City, finding that the proposed construction satisfies the requirements of the Flood Plain Ordinance and other applicable city ordinances.

[5] In pertinent part, 65 ILCS 5/11-31-1 provides that a municipality may demolish "dangerous and unsafe buildings" within its territory provided that it

> apply to the circuit court of the county in which the building is located . . . for an order authorizing action to be taken with respect to a building if the owner or owners of the building, including the lien holders of record, after at least 15 days' written notice by mail so to do, have failed to put the building in a safe condition or to demolish it . . . .

(continued...)

sequently, on January 27, 2000, the parties met at City Hall and attempted to resolve their dispute. At this meeting, Mr. Tyrer's architect, Dave Jenkins, presented building plans that he claimed would resolve the run-off problem and would bring the building into compliance with city ordinances. The City disputed this claim. Its architect opined that the proposed plans would not eliminate the excess drainage on neighboring properties and that, instead, the entire structure must be torn down and the fill removed. The Zoning Board of Appeals ultimately rejected Jenkins' architectural plans, as well as Mr. Tyrer's subsequent petition for a variance. Notice of demolition was issued to Mr. Tyrer's mortgage company, First American Credit Union, on March 28, 2000.

## B. State Court Proceedings

In April 2000, Mr. Tyrer filed suit against the City of South Beloit in the Circuit Court of Winnebago County, Illinois. He alleged that the cease and desist order and the demolition order deprived him of a property interest without due process of law; he sought to enjoin the City from demolishing or further interfering with the use of his property. The complaint was amended in September 2001 to add a second count alleging that the City's actions constituted a regulatory or temporary taking of his property that warranted just compensation under the Fifth and Fourteenth Amendments.

In August 2000, the City filed an answer and a counterclaim, seeking authorization to demolish the house on

---

(...continued)
65 ILCS 5/11-31-1(a). The statute also sets forth what constitutes appropriate notice to the property owner.

Mr. Tyrer's property. In May 2001, the City filed a motion for summary judgment on this counterclaim. It contended that no work had been done on the house since the beginning of the dispute between the City and Mr. Tyrer and that run-off from the fill now was draining into the yards of neighbors. In its view, because the house was in a "dangerous condition," demolition was proper under 65 ILCS 5/11-31-1. The City also submitted, however, that, if Mr. Tyrer would agree to remove the fill, it would permit him to continue with construction even though the project exceeded the scope of the original permit. Mr. Tyrer did not acknowledge this offer, but instead filed his own motion for summary judgment on his Fifth and Fourteenth Amendment takings claim.

On May 21, 2002, the state trial court denied Mr. Tyrer's motion for summary judgment on the takings claim and granted the City summary judgment on its demolition counterclaim. The court determined that the structure had lost its legal non-conforming status and that it did not meet City building requirements. It invited Mr. Tyrer to submit a plan for demolition "if he wishe[d] to do so," and noted that, if he did not, it would "enter an order for the city to demolish." App. at 17. Mr. Tyrer did not submit such a plan and, on August 29, 2002, the court issued a final order authorizing demolition. The house actually was demolished sometime in July 2002—before the entry of the August 29th order.

Mr. Tyrer appealed the judgment of the state trial court. He challenged both the trial court's demolition order and its denial of summary judgment on his takings claim. Noting that Mr. Tyrer had failed to "file a motion to stay the enforcement of the trial court's memorandum of decision granting the defendant's motion for summary judgment for

demolition," the Appellate Court of Illinois held that Mr. Tyrer's challenge to the trial court's demolition order was moot because the house already had been destroyed; therefore, effective relief was precluded. *Id.* at 20. The court remarked, however, that the demolition raises other legal issues, which "may be presented by another proceeding." *Id.* at 21 (noting that the present matter "will not be *res judicata* as to whether the defendant had proper grounds to demolish the plaintiff's home, since there is no judgment on the merits").

The state appellate court also affirmed the trial court's denial of summary judgment on Mr. Tyrer's takings claim. It held that there was a genuine issue of material fact concerning whether the plaintiff's architectural plans, as presented to the City Council, "would have resolved the alleged runoff problem and complied with the defendant's zoning ordinances." *Id.* at 23. The court remanded for further proceedings consistent with the opinion.

Very little of substance has taken place in Mr. Tyrer's state action since the case was remanded to the trial court. A few depositions appear to have been taken; no orders since have been entered.[6] Most significant to this appeal, after remand, Mr. Tyrer amended his complaint, adding a third count. This new count adds as defendants City Council members in their individual capacities. It alleges that the actions of the City and its Council members "deprived the plaintiff of the use of his property from the date of the cease and desist order," in violation of the Fifth Amendment Takings Clause

---

[6]  In fact, inactivity in the state court action prompted the state court in 2004 to ask the parties to address whether the case ought to be dismissed for want of prosecution. The court, after hearing from Mr. Tyrer, apparently took no further action.

and the Illinois Constitution. Contrary to the City's asser-
tion, this new count does not mention specifically the
demolition of Mr. Tyrer's property as grounds for liability.

## C. District Court Proceedings

In August 2004, Mr. Tyrer filed the present action against
the City in the United States District Court for the North-
ern District of Illinois. He alleged that the City's demolition
of his house lacked legal authorization and violated the
Fifth and Fourteenth Amendment's Due Process Clauses.
*See* App. at 25-28.

In October 2004, the City filed a motion to dismiss,
contending that the district court lacked subject matter
jurisdiction under the *Rooker-Feldman* doctrine to review the
state court's order authorizing demolition. *See Rooker v. Fid.
Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of
Appeals v. Feldman*, 460 U.S. 462 (1983). In the alternative, the
City contended that the district court should abstain under
the *Colorado River* doctrine, *see* 424 U.S. 800, or other absten-
tion doctrines, *see Louisiana Power & Light Co. v. City of
Thibodaux*, 360 U.S. 25 (1959); *Burford v. Sun Oil Co.*, 319 U.S.
315 (1943); *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496
(1941). The district court denied the City's motion to
dismiss. It held that *Rooker-Feldman* does not apply to the
facts of this case. *See* App. at 40 ("[P]laintiff's complaint
does not directly challenge any state court judgment. Nor is
it inextricably intertwined."). The district court also rejected
the City's contention that abstention was warranted under
*Pullman*, *see id.* ("[T]here is no substantial uncertainty as to
the meaning of state law and there is no reasonable proba-
bility that the state court's clarification of state law might
obviate the need for a federal constitutional ruling."), under

*Burford*, *see id.* ("[T]he law governing plaintiff's claims in state court is well-settled and clear."), or under *Thibodaux*, *see id.* (same).

However, the district court held that abstention was proper under the *Colorado River* doctrine. Turning to the first *Colorado River* prong, whether the federal and state proceedings are parallel, it found that "both cases arise out of substantially the same set of facts, and the legal issues are substantially the same." *Id.* (also noting that "the parties are substantially the same"). The court then considered whether the case involves the requisite exceptional circumstances. Noting that the state proceedings had been ongoing for more than four years and that allowing both suits to proceed concurrently would "promote piecemeal and duplicative litigation," the court concluded that "there is no reason that [the plaintiff] cannot litigate those claims in state court that he seeks to assert here." *Id.*[7] Therefore, the district court stayed the federal proceedings pending final disposition of the state court action.

## II

### DISCUSSION

In *Colorado River*, the Supreme Court emphasized the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. "Abstention from the exercise of federal jurisdiction is the exception, not the rule: The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary

---

[7] The district court denied the plaintiff's motion to reconsider its decision on February 10, 2005. *See* App. at 47.

and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813 (internal quotation marks omitted). The "clearest of justifications" must be present for a federal court to stay a proceeding pending completion of a state action. *Id.* at 819.

To determine whether a stay is appropriate under the *Colorado River* doctrine, the district court must undertake a two-part inquiry. First, the court must determine whether "the concurrent state and federal actions are actually parallel. Then, once it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of 'exceptional circumstances.' " *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (internal quotation marks and citations omitted). In *Colorado River*, the Supreme Court set forth four such factors for a district court's consideration: the difficulties posed when a state and federal court concurrently assume jurisdiction over the same *res;* the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which the state and federal proceedings were filed. *See* 424 U.S. at 818-19. In *Moses H. Cone*, the Court identified two additional factors relevant to the *Colorado River* inquiry: whether state or federal law provides the rule of decision; and whether the state action will adequately protect the federal plaintiff's rights. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23-27 (1983). In applying these requirements, there is a "general presumption against abstention." *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003).

In this case, the district court concluded that both the parallel-actions and the exceptional-circumstances requirements had been fulfilled and stayed Mr. Tyrer's federal

suit "pending final disposition of the state court action." App. at 40. We review a district court's ruling on a motion to stay under the *Colorado River* doctrine for abuse of discretion. *See Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. #7*, 125 F.3d 546, 548-49 (7th Cir. 1997); *see also CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 852 (7th Cir. 2002) ("[T]he close relation between the decision to abstain and normal docket control (a district judge is routinely required to decide how fast to move particular cases along) makes it appropriate to give at least some weight to the judge's decision to abstain.").

## A. Parallel Actions

Mr. Tyrer first contends that the district court abused its discretion by determining that his state and federal actions are parallel. According to Mr. Tyrer, that finding was improper because "the issues presented to the state court differ significantly from those presented to the federal district court in the instant matter." Appellant's Br. at 16. In state court, according to Mr. Tyrer, he challenges the constitutionality of the events *leading up to* demolition, including the application of city ordinances to his case and the City Council's cease and desist order. In the federal action, by contrast, he challenges the constitutionality of the "*actual demolition* of the structures that existed on his property." *Id.* at 17 (emphasis added). Thus, while the parties and operative facts are identical, Mr. Tyrer submits that the "ultimate issues to be resolved in each forum diverge." *Id.* at 12.

To be parallel, however, "it is not necessary that there be formal symmetry between the two actions." *Clark*, 376 F.3d at 686 (internal quotation marks omitted). Generally, a "suit

is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1288 (7th Cir. 1988) (internal quotation marks omitted). Among other things, to determine whether two suits are parallel, a district court should examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues. *See Clark*, 376 F.3d at 686.

The district court's brief examination of whether Mr. Tyrer's suits are parallel was far from the "painstaking comparison of the federal and state complaints" that we previously have praised in similar cases. *See, e.g., Interstate Material*, 847 F.2d at 1288 (internal quotation marks omitted). The district court, in a single sentence, simply stated that Mr. Tyrer's state and federal actions raise the same factual and legal issues. *See* App. at 40. The court did not articulate the issues it believed to be identical; nor did it examine the differences between the two actions. Although we do not require the "rote application" of any of the *Colorado River* factors, *Sverdrup*, 125 F.3d at 550, we previously have noted that district courts should consider the relevant requirements and weigh the relevant factors "in a way that allows this court to review it," *id.* (internal quotation marks omitted).

Although the district court's review of the parallel-actions requirement was less comprehensive than we would like, we must conclude that the record before us makes "obvious the path of decision followed by the district court." *Id.* After reviewing the two complaints, it is clear that Mr. Tyrer's two suits are parallel. First, Mr. Tyrer raises the same due process claim in both the state and the federal action. In both suits, he alleges that the City of South Beloit arbitrarily

or without legal authorization interfered with the use of his property, thus "depriv[ing] [him] of his property without due process of law."[8] State Complaint, App. at 10; Federal Complaint, *id.* at 26 (internal quotation marks omitted). Indeed, the parties in both cases cite the same statutes and cases to define the scope of the City Council and the Zoning Board's authority to order demolition and to define the requisite protections and procedures to be followed in the course of carrying out this order. Second, the parties in the federal suit—Mr. Tyrer and the City—are also parties to the state suit.[9] Lastly, the facts alleged in both complaints are identical; the two suits will be resolved largely by reference to the same evidence.[10] *See Vulcan Chem. Techs., Inc. v. Barker*,

---

[8] In his state action, Mr. Tyrer alleges that the defendants' actions violated both the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment; the federal action, by contrast, is more narrow, alleging only a due process violation.

[9] Mr. Tyrer in his state action also names as defendants the City Council members in their individual capacities. But "[t]he existence of additional parties in one suit does not of itself destroy parallelism." *Schneider Nat. Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990). Significantly, the City of South Beloit is a defendant in both the state and the federal action; that Mr. Tyrer also named the City Council members as defendants in his state suit does not undermine the conclusion that Mr. Tyrer's federal suit raises the same claims against the City that are being litigated currently in his state action.

[10] For example, as we shall discuss further in the text below, the same persons would be deposed in both suits—namely the City Council members, the architects who submitted plans to the Zoning Board of Appeals and Mr. Tyrer. The same documents also would be evaluated in both suits, including the records of
(continued...)

297 F.3d 332, 341 (4th Cir. 2002) (holding that because the federal court was required to "consider[] the *same evidence and arguments*" as did the state court in an earlier action, dismissal or stay under *Colorado River* was proper (emphasis added)); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 911 F.2d 993, 1005 (5th Cir. 1990) ("There is little to be gained from rehashing the *same evidence* in another forum . . . . The district court thus properly concluded that the desire to avoid piecemeal litigation counseled in favor of a stay." (emphasis added)).

Mr. Tyrer responds that, although the state suit focuses exclusively on events pre-demolition, the federal suit focuses on the constitutionality of the demolition itself—"a specific and discrete act of [the] defendant which took place long after [the] plaintiff's state complaint was filed." Appellant's Br. at 17 ("Notably, the actual demolition of [the] plaintiff's property was not alleged in his state court complaint or any of its amendments . . . ."). This statement is not an accurate characterization of the state court proceedings. Although Mr. Tyrer's original state complaint challenged relevant city ordinances, the cease and desist order, the zoning and condemnation proceedings and the demolition order, the complaint was amended after the case was remanded by the Appellate Court of Illinois to the state trial court and after the federal suit had been initiated. Count III of the amended state complaint now alleges that the

> action[s] of the defendant City of South Beloit and each of
> the named Counsel [sic] members deprived the plaintiff

---

[10] (...continued)
the City Council hearings, the substance of the notice given to Mr. Tyrer, and the work permit issued by Winnebago County.

of the use of his property from the date of the cease and desist order and that such action constitutes either a temporary or a permanent taking of plaintiff's subject premises.

Although the amended complaint does not challenge *explicitly* the constitutionality of the demolition, it broadly encompasses *all* events after construction halted, including the actual demolition and its authorization by the City.

To be sure, Count III alleges violation of the Fifth Amendment Takings Clause, not violation of the Fourteenth Amendment Due Process Clause—the focus of the federal complaint. Nevertheless, we repeatedly have held that two actions are "parallel" where the underlying issues are the same, even if they have been "repackag[ed] . . . under different causes of action." *Clark,* 376 F.3d at 687. In this case, Mr. Tyrer's claims in the federal and state actions are inextricably interlinked: Government action effecting a taking is only valid if the plaintiff is compensated justly *and* is afforded due process of law. Thus, his takings claim requires the court to probe not only the public use of the property and the proper amount of compensation to be paid, but also the protections afforded the property owner prior to the taking. *See* Thomas Merrill, *The Goods, the Bads, and the Ugly,* Legal Aff., Jan.-Feb. 2005, at 16, 18 ("The law requires that [owners of property] receive just compensation for any taking of their property, and due process affords them a fair hearing on the legal authority for the taking and the amount of just compensation they are entitled to receive."); *cf. Coniston Corp. v. Vill. of Hoffman Estates*, 844 F.2d 461, 464-65 (7th Cir. 1988) (discussing the overlap between the Due Process and Takings Clauses). In addition, in Count I of his state complaint, Mr. Tyrer contests the procedures utilized by the City, *see* App. at 9 ("[The] City

Council . . . arbitrarily passed a resolution directing [con-
demnation and demolition].”), and explicitly states
a separate due process claim, *id.* at 10 (alleging that the
“plaintiff is being deprived of property without due process
of law”). Necessarily, then, the legal and factual analysis
required to resolve the state-court claims is substantially
similar to the analysis that a federal court would undertake
in evaluating Mr. Tyrer’s due process challenge to the
demolition of his house. For example, in examining the
legitimacy of “actual demolition,” Appellant’s Br. at 17, the
federal court would have to examine precisely the matters
in question in the state suit: the City Council hearings; the
notice given before demolition, including whether Mr. Tyrer
was given fair warning that his property was in a dangerous
condition; the procedures followed by the Zoning Board of
Appeals; and whether the City acted within the scope of its
legal authority. In sum, although the state and federal suits
are not identical, and although the focus of the federal
proceeding is more specific than the focus of the state
proceeding, both actions “rely on the same factual predicate
to raise substantially similar legal issues against substan-
tially similar parties.” *Clark*, 376 F.3d at 687.

## B. Exceptional Circumstances

As we explained in *Clark,* “a conclusion that federal and
state proceedings are parallel only begins the inquiry into
whether a stay is appropriate under *Colorado River*.” *Id.*
Having determined that the proceedings are parallel,
we now must turn to the district court’s determination that
Mr. Tyrer’s case presents an “exceptional circumstance[].”
*Id.* As mentioned previously, *Colorado River* set forth four
primary factors to be considered when deciding whether
abstention is appropriate: whether the same *res* is involved
in both cases; inconvenience to the parties; the need to avoid

piecemeal litigation; and the order of state/federal filings. *See* 424 U.S. at 818-19. This list was expanded by the Supreme Court in *Moses H. Cone*, 460 U.S. at 23-27, and this circuit has refined the analysis to a consideration of ten factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992) (internal quotation marks omitted). We are guided, in reviewing the district court's application of these factors, by the Supreme Court's admonition that no single factor is "necessarily determinative." *Colorado River*, 424 U.S. at 818; *see also Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990) ("The weight to be given any one factor is determined solely by the circumstances of the particular case—there is no mechanical formula by which to determine when a stay is appropriate" (citing *Moses H. Cone*, 460 U.S. at 16)). In the end, what is required is a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise. Once it is clear that the district court carefully weighed the appropriate factors, we deferentially review its decision. *See AXA*, 347 F.3d at 279.

The district court in this case did not discuss extensively the relevant factors, although it did give far more attention to the presence or absence of "exceptional circumstances" than it did to whether Mr. Tyrer's state and federal suits are parallel. It listed the relevant factors in a descriptive fashion and summarily applied them to the facts of Mr. Tyrer's case.[11] Specifically, the court determined that, although the federal forum was not inconvenient (factor 2) and although federal law provides the rule of decision (factor 5), allowing the federal proceeding to continue would promote "piecemeal and duplicative litigation as both courts are capable of deciding the issues raised" (factor 3). App. at 40. It also concluded that the state action was much further along procedurally than the federal action (factor 7) and that "the state court action will clearly allow plaintiff to vindicate any violation of his federal rights" (factor 6). *Id*. On balance, the court concluded, the "factors overall support abstention under the *Colorado River* doctrine." *Id.*

Because several of the relevant factors strongly support the district court's decision not to exercise jurisdiction over Mr. Tyrer's federal action, its decision to abstain under *Colorado River* does not constitute an abuse of discretion. Certainly, the district court's concern about the progress made in the state proceeding is well-founded

---

[11] Thus, the district court's actions in this case differed from the district court's treatment of the relevant *Colorado River* factors in *Sverdrup*. *See Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. #7,* 125 F.3d 546, 550 (7th Cir. 1997) (reversing the abstention order because "the district court never discussed the *Colorado River* factors and articulated no reason for its decision to stay the pending federal suit").

and, given the procedural history of this dispute, was entitled to great weight. We cannot accept Mr. Tyrer's submission that "very little of substance has, in fact, taken place [in the state suit], other than the parties' opposing motions for summary judgment." Appellant's Br. at 22. By the time that Mr. Tyrer filed his federal suit, his state suit had been ongoing for approximately four years. A number of significant events have taken place in that case: it has been through an order for demolition; motions for summary judgment; an appeal and remand; and various amendments to the plaintiff's complaint, including the addition of Count III after the federal litigation was commenced. Although the precise status of discovery is not apparent from the record before us, it is clear that various depositions have been taken in the state case. At the very least, the "controversy appear[s] to be closer to a resolution in the state proceedings than in the federal." *Caminiti & Iatarola,* 962 F.2d at 702.

The district court's concern over the danger of piecemeal litigation is also well-founded. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke v. Burlington N. R.R. Co.,* 879 F.2d 1556, 1560 (7th Cir. 1989) (internal quotation marks omitted). As the district court recognized, if Mr. Tyrer pursues both his federal and his state action, substantially similar issues will be litigated simultaneously in different forums. As we explained in *LaDuke,* this circumstance gives rise to two problems:

> First, a party may try to accelerate or stall proceedings in one of the forums in order to ensure that the court most likely to rule in its favor will decide a particular issue first. Second, the possibility exists that one court, unaware that the other court has already ruled,

will resolve an issue differently and create a con-
flict between the two forums.

*Id.*

Mr. Tyrer responds that the issues in the federal and the
state suit are not identical and, therefore, resolution of the
issues in his state case "will not lay to rest the claims
remaining in the other proceedings." Appellant's Br. at 20.
For example, he notes that the federal suit raises the consti-
tutionality of the actual demolition, while the state suit
raises the constitutionality of the city ordinances and
whether the Zoning Board's actions constituted a "taking of
[the] plaintiff's property." *Id.* But, as we already have noted,
the actions are parallel in nature. Count III of Mr. Tyrer's
state complaint now contests the constitutionality of the
actions taken by the City and by its Council members "from
the date of the cease and desist order," including, necessar-
ily, the actual demolition. It is true that the state action
alleges a violation of the Fifth Amendment Takings Clause,
not the Fourteenth Amendment Due Process Clause as does
the federal action. But the danger of piecemeal litigation
does not turn on formal identity of issues but on concerns
about the efficient use of judicial resources and the public's
perception of the legitimacy of judicial authority:

> When a case proceeds on parallel tracks in state and
> federal court, the threat to efficient adjudication is self-
> evident. But judicial economy is not the only value that
> is placed in jeopardy. The legitimacy of the court system
> in the eyes of the public and fairness to the individual
> litigants also are endangered by duplicative suits that
> are the product of gamesmanship or that result in
> conflicting adjudications.

*Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 694
(7th Cir. 1985). We continued:

> While the doctrine of res judicata largely obviates the risk of conflicting final dispositions on the merits, a significant risk of conflict attends interlocutory rulings that are not ordinarily entitled to preclusive effect. To take a fairly pedestrian example, the state and federal courts may issue contradictory orders on discovery matters. This single, simple conflict, on matters ordinarily within the trial courts' broad discretion, leads ineluctably to a "rush to judgment," with each side attempting to push forward the litigation in the forum ruling in its favor on the preliminary matter.

*Id.* at 694 n.2 (internal citations omitted).

In this case, allowing the two suits to proceed concurrently would waste the parties' resources, risk duplicative rulings and reward a strategic gamesmanship that has no place in a dual system of federal and state courts.[12] As discussed previously, the claims in the federal and state suits are predicated on the same facts and will be resolved largely by reference to the same evidence. Both suits require the court to examine the protections afforded Mr. Tyrer before his property was destroyed. To that end, the same persons will be deposed, the same witnesses called and the same evidence produced. Not only would duplicative litigation waste judicial resources, but it also would create an undue risk of conflicting final judgments on the merits of Mr. Tyrer's claims. *See Clark*, 376 F.3d at 687 (finding that similar facts warranted abstention: "[T]he two courts would

---

[12] As we note above, it is troubling that Mr. Tyrer limited reference to the demolition in his state claim to takings issues, while narrowly drawing his federal complaint to allege only a due process claim. Both claims could have, and should have, been brought in the state forum.

oversee similar pre-trial motions and discovery matters and two different triers of fact would be asked to consider the same issues, evidence and witnesses. . . . Not only would a stay save judicial resources, but it would also protect against the danger of the two proceedings reaching inconsistent results").

Mr. Tyrer nevertheless contends that the state court has proven inhospitable to his claims. He points to the state court's summary denial of his constitutional claims, as well as its denial of his demand for a jury trial.[13] He does nothing to substantiate this argument, however, except to complain that the state court rejected his claims. *See* Appellant's Br. at 21-22. The insinuation that Illinois courts will not live up to the standard of full and fair adjudication of the issues "is pure speculation that we expressly disavow." *AXA*, 347 F.3d at 280; *see also CIGNA HealthCare*, 294 F.3d at 855 ("This is all speculation; it is enough that we emphasize—and we do emphasize—that if down the road the state court judge proves unwilling or unable to enforce CIGNA's valid rights . . . and CIGNA cannot get prompt relief from the state appellate courts, it can ask the district judge to lift the stay[.]").[14]

---

[13] Mr. Tyrer also contends that the state court's ruling may foreclose to him a jury trial on his federal claims. However, if he believes the state court improperly has denied him the right to trial by jury on his federal claims in violation of the Seventh Amendment, Mr. Tyrer can appeal that decision.

[14] We noted in *CIGNA* that, although the preclusive effect of a state court judgment in a federal case is a matter of state rather than federal law, *see Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380-81 (1985), "Illinois law denies collateral estoppel effect to a finding not made on the basis of a fair

(continued...)

Second, Mr. Tyrer submits that a plaintiff with "federal rights and claims" has a right to a federal forum. The existence of a federal question typically "weighs heavily against abstention." *Sverdrup*, 125 F.3d at 549. However, Mr. Tyrer chose to bring his federal claims first in a state forum. He filed a complaint in state court in 2000, raising a due process claim. He amended this same complaint in 2001, adding a Fifth and Fourteenth Amendment takings claim. He again amended the complaint in 2005, expanding the federal constitutional takings claim to encompass events occurring after the cease and desist order. *See Interstate Material*, 847 F.2d at 1289 (finding it significant that the party opposing abstention "filed both actions and chose to file in state court first"). Mr. Tyrer simply has not established that he will be denied an opportunity to litigate fully and fairly his federal claims in the state forum that he initially chose.

### Conclusion

The district court did not abuse its discretion in weighing the factors bearing on whether Mr. Tyrer's state and federal suits are parallel and present those "exceptional circumstances" warranting abstention. For the reasons set forth in this opinion, we affirm the judgment of the district court.

AFFIRMED

---

(...continued)
and adequate hearing." *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002) (citing *Fried v. Polk Bros., Inc.*, 190 Ill. App. 3d 871 (Ill. App. Ct. 1989)).

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*