In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 07-2394

MARVIN F. TYRER,

*Plaintiff-Appellant*,

*v.*

CITY OF SOUTH BELOIT,
a municipal corporation,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 C 50353—**Philip G. Reinhard,** *Judge*.

———————

ARGUED NOVEMBER 30, 2007—DECIDED FEBRUARY 22, 2008

———————

Before CUDAHY, RIPPLE and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. In August 2004, Marvin Tyrer filed a complaint in the United States District Court for the Northern District of Illinois in which he alleged that the City of South Beloit had demolished his house without due process of law or just compensation. He previously had filed a similar complaint in Illinois state court, and pursuant to the *Colorado River* abstention doctrine, the district court had chosen to stay the federal proceedings pending final disposition of the state court action. We

affirmed the district court's stay order in *Tyrer v. City of South Beloit*, 456 F.3d 744 (7th Cir. 2006) (*"Tyrer I"*).

On March 7, 2007, citing "changed circumstances," Mr. Tyrer filed a motion in the district court in which he requested that it lift the stay on the federal proceedings. On May 18, 2007, the district court denied his motion. For the reasons set forth in this opinion, we affirm the decision of the district court.

# I

# BACKGROUND

## A. Facts[1]

In September of 1997, Marvin Tyrer purchased residential property in the City of South Beloit, Illinois. The house on this property had been built in the early 1900s, prior to the enactment of city ordinances regulating minimum lot size, front-yard setbacks and minimum flood plain elevation requirements. Although the house did not comply with these regulations, it was deemed by the City to be a "legally nonconforming structure" because it had been built lawfully prior to the passage of the ordinances.

The City's zoning ordinances provide that, if a legally nonconforming structure is damaged, destroyed or substantially changed, it no longer is exempt from current zoning laws. Under these circumstances, the owner must apply for a variance. Shortly before Mr. Tyrer pur-

---

[1] A more thorough account of the facts of this case can be found in our previous opinion, *Tyrer v. City of South Beloit*, 456 F.3d 744 (7th Cir. 2006).

chased the property, its previous owner had applied for and received a variance in order to remodel and add onto the house.

When Mr. Tyrer purchased the property in September 1997, no work had begun on these projects. In the spring of 1998, with the intent of carrying out the previous owner's building plans, Mr. Tyrer obtained the required building permits and commenced construction. After installing the walls, footings and foundation for the addition, Mr. Tyrer was informed that, to be in compliance with city ordinances, he needed to obtain additional fill for the purpose of covering the footings above the frost line. Mr. Tyrer complied with this request. In November 1998, however, a building inspector discovered that the additional fill was causing excess run-off onto neighbors' property and that Mr. Tyrer had exceeded the scope of his work permit.

The city clerk issued a cease and desist order in November 1998. Mr. Tyrer protested the order, but he ultimately was forced to halt construction. The City then issued a notice of demolition on January 4, 2000, pursuant to 65 ILCS 5/11-31-1.

On January 27, 2000, the parties met at City Hall and attempted to resolve their dispute. At this meeting, Mr. Tyrer presented building plans that he claimed would resolve the run-off problem and bring the house into compliance with city ordinances. The City disputed this claim. Its architect opined that his proposed plans would not eliminate the excess drainage on neighboring properties and that, instead, the entire structure had to be torn down and the fill removed. The Zoning Board of Appeals ultimately rejected Mr. Tyrer's plans, as well as his subsequent petition for a variance.

**B. State Court Proceedings**

In April 2000, Mr. Tyrer filed suit against the City of South Beloit in the Circuit Court of Winnebago County, Illinois. He alleged that the cease and desist order and the demolition order had deprived him of a property interest without due process of law; he also sought to enjoin the City from demolishing or further interfering with the use of his property. He amended his complaint in September 2001 to add a second count, alleging that the City's actions constituted a regulatory or temporary taking of his property that warranted just compensation under the Fifth and Fourteenth Amendments. The City filed an answer as well as a counterclaim in which it sought authorization to demolish the house.

In May 2001, the City filed a motion for summary judgment. It contended that no work had been done on the house since the beginning of the dispute between the City and Mr. Tyrer, and that run-off from the fill now was draining into the yards of neighbors. In the City's view, because the house was in a "dangerous condition," demolition was proper according to 65 ILCS 5/11-31-1. The City also submitted, however, that, if Mr. Tyrer would agree to remove the fill, it would permit him to continue with construction even though the project exceeded the scope of the original permit. Mr. Tyrer did not acknowledge this offer, but he instead filed his own motion for summary judgment on his Fifth and Fourteenth Amendment claims.

On May 21, 2002, the state trial court denied Mr. Tyrer's motion for summary judgment on the takings claim and granted the City summary judgment on its demolition counterclaim. The court determined that the structure had lost its legal nonconforming status and that it did

not meet city building requirements. It invited Mr. Tyrer to submit a plan for demolition and noted that, if he did not, it would enter an order for the City allowing demolition. Mr. Tyrer did not submit such a plan and, on August 29, 2002, the court issued a final order authorizing demolition. Before the entry of the August 29th order, however, the city already had demolished the house.

Mr. Tyrer appealed the judgment of the state trial court. He challenged both the trial court's demolition order and its denial of summary judgment on his takings claim. Noting that Mr. Tyrer had failed to file a motion to stay the demolition, the Illinois Appellate Court held that Mr. Tyrer's challenge to the demolition order was moot because the house already had been destroyed; therefore, effective relief was precluded. The court remarked, however, that the demolition raises other legal issues, which may be presented by another proceeding.

The state appellate court also affirmed the denial of summary judgment on Mr. Tyrer's takings claim. It held that there was a genuine issue of material fact concerning whether Mr. Tyrer's architectural plans, as presented to the City Council, would have resolved the alleged run-off problem and complied with the defendant's zoning ordinances. The court remanded for further proceedings consistent with the opinion.

After the case was remanded to the trial court, discovery proceeded. Mr. Tyrer amended his complaint, adding a third count alleging that the actions of the City and its council members had deprived him of the use of his property from the date of the cease and desist order in violation of the Fifth Amendment Takings Clause and of the Illinois Constitution. This new count also added as

defendants the city council members in their individual capacities.

## C. Federal Court Proceedings

In August 2004, Mr. Tyrer filed an action against the City in the United States District Court for the Northern District of Illinois. There, he alleged that the City's demolition of his house lacked legal authorization and violated the Fifth and Fourteenth Amendments' Due Process Clauses. He named both the City and the individual city council members as defendants.

In October 2004, the City filed a motion asking that the district court abstain from further proceedings according to the *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The district court first determined that the state and federal cases were parallel, noting that both cases arose out of substantially the same set of facts, and the legal issues were substantially the same. The court then considered whether the case involved the requisite exceptional circumstances necessary for a federal court to decline to exercise its jurisdiction. Noting that the state proceedings had been ongoing for more than four years at that point, that the plaintiff could effectively litigate his claims in state court, and that allowing both suits to proceed concurrently would promote piecemeal and duplicative litigation, the district court concluded that a stay was appropriate in this case. Therefore, the district court stayed the federal proceedings pending final disposition of the state court action.

Mr. Tyrer appealed the district court's stay order. In *Tyrer I*, we affirmed the decision of the district court. We noted that the two suits, though not stating identical

claims, were parallel: They involved the same parties, the same factual situation, the same evidence and very similar claims. Additionally, we recognized that "exceptional circumstances" existed that justified the district court's decision not to exercise jurisdiction. Specifically, we noted that the state proceedings were substantially further along than the federal proceedings, and that a significant risk of piecemeal and duplicative litigation existed if both suits continued simultaneously. Therefore, we held that abstention under the *Colorado River* doctrine was proper.

## D. Subsequent State Court Proceedings

Since our decision in *Tyrer I*, Mr. Tyrer has continued to pursue his claim in state court. On February 9, 2006—apparently for the first time—Mr. Tyrer deposed the city engineer and city commissioners who had been involved in the decision to demolish his house. In these depositions, the officials allegedly exhibited a lack of awareness of many details relevant to Mr. Tyrer's dispute with the City. Mr. Tyrer considers these deposition statements to be "incredible" evidence of a dereliction of duty by the city council members. He asserts that the recently acquired deposition testimony constitutes substantial new evidence in his case, and he filed a brief in the Illinois Appellate Court to that effect.

Despite this late-discovered evidence, however, the state trial court granted summary judgment for the City, dismissing Mr. Tyrer's complaint in its entirety and with prejudice. It found that Mr. Tyrer had failed to seek timely review of the administrative decision of the South Beloit Zoning Board of Appeals, and therefore the court

lacked jurisdiction to hear his case. Mr. Tyrer has ap-
pealed this decision to the state appellate court.

## E. Subsequent Federal Court Proceedings

On March 7, 2007, Mr. Tyrer filed a motion in the district
court, requesting that it lift its previously issued stay.[2]
His motion cited two alleged "changed circumstances" in
the state court proceedings, which he claims would war-
rant lifting the stay:

> 1) the state court's hostility to his claims, as evidenced
> by the court's decision to dismiss his case for lack of
> jurisdiction rather than giving him a trial on the merits;

---

[2] Mr. Tyrer's motion to lift the stay also included an "embed-
ded" motion, requesting leave to amend his complaint to add a
Fourth Amendment unlawful seizure claim. The district court
rejected Mr. Tyrer's request because all federal proceedings
had been stayed pending final disposition of his case in state
court. The court noted that such a tactic, intended in part to
make the federal court proceeding no longer parallel to the
state court proceeding, was both procedurally irregular and
unsupported by authority.

On appeal, Mr. Tyrer relies on *SELBST v. McDonald's Corp.*,
No. 04-C-2422, 2006 WL 566450 (N.D. Ill. March 2006), as
authority for his attempt to amend his complaint despite the
stay. The situations are clearly distinguishable, however.
*SELBST* involved an amendment to a complaint during a stay
of discovery, and nothing about a discovery stay precludes
amendments to a complaint. Here, by contrast, the order was
for a stay of "all proceedings." The district court did not err
when it refused to allow Mr. Tyrer to circumvent the stay
by amending his federal complaint.

2) the changed procedural posture, specifically the "unwarranted delay" caused by the state court's dismissal for want of jurisdiction, which has resulted in the federal proceedings effectively being "further along" than the state proceedings.

The district court rejected Mr. Tyrer's request, concluding that neither of these so-called changed circumstances justified lifting the stay. The court noted that no evidence substantiated Mr. Tyrer's suggestion that the state court was indifferent or hostile to his rights. It also found the assertion that the state case was further from resolution than the federal case because it now was being heard on appeal in state court to be "simply disingenuous." R.49 at 1. Mr. Tyrer timely appealed the district court's denial of his motion to lift the stay.

## II

## DISCUSSION

Mr. Tyrer spends the greatest portion of his brief arguing that the stay should not have been granted in the first instance; he contends that the federal and state cases are not parallel, and that no exceptional circumstances warranted the court abdicating its duty to exercise jurisdiction in this case. These arguments, however, already have been addressed twice by the district court, as well as by this court in *Tyrer I*. We entertain a strong presumption that "a court ought not to revisit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants reexamination." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007); *see also Moriarty v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005) (refusing to reconsider an earlier jurisdictional determina-

tion and noting that "this Court will not revisit an issue it resolved seven years ago," and that the "law of the case doctrine advises against a court reopening previously decided issues").

We already have determined conclusively that the district court properly granted the stay of federal proceedings pending the completion of state proceedings. *See Tyrer I*, 456 F.3d at 757. Mr. Tyrer, therefore, may not relitigate this issue; instead, he must show that substantially changed circumstances since the time of that decision now warrant dissolution of the stay. *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 260 (7th Cir. 1984); *see also Cruz v. Melecio*, 204 F.3d 14, 25 (1st Cir. 2000); *Twp. of Franklin Sewerage Auth. v. Middlesex County Util. Auth.*, 787 F.2d 117, 120 (3d Cir. 1986). The district court determined that Mr. Tyrer had not presented any changed circumstances that would warrant lifting the stay in this case. We review this decision for abuse of discretion. *Tyrer I*, 456 F.3d at 751.

As his first example of "changed circumstances," Mr. Tyrer points to the current disposition of the case in state court. We noted in *Tyrer I* that "if down the road the state court judge proves unwilling or unable to enforce [his] valid rights . . . and [he] cannot get prompt relief from the state appellate courts, [he] can ask the district judge to lift the stay." 456 F.3d at 757 (quoting *CIGNA Healthcare of St. Louis v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002)). Since *Tyrer I*, the state trial court has dismissed Mr. Tyrer's claim based on a lack of jurisdiction: It determined that Mr. Tyrer had failed to exhaust his administrative remedies in challenging the determination of the zoning board. That decision currently is being appealed to the state appellate court.

We previously have recognized that a state court's hostility can warrant a motion to lift the stay. *Tyrer I*, 456 F.3d at 757; *CIGNA Healthcare*, 294 F.3d at 855. Other than the fact that the state court dismissed his claim, however, Mr. Tyrer has pointed to no evidence that it has been hostile, biased or otherwise unable to address his claims. A plaintiff attempting to prove state court hostility must point to evidence of actual bias or hostility against the party himself—not merely legitimate rulings against a party on a contested claim. We expressly noted in *Tyrer I* that rulings against a party, without more, did not render the state court "inhospitable," and we opined that an "insinuation that Illinois courts will not live up to the standard of full and fair adjudication of the issues is pure speculation that we expressly disavow." 456 F.3d at 757 (internal citations and quotation marks omitted). Nothing about the state court proceedings since *Tyrer I* constitutes the type of judicial hostility that would warrant lifting the stay.

Mr. Tyrer's second proffer of "changed circumstances" is his contention that the federal court proceeding is now further along than the state court action. In his view, in order for the state court to reach the merits of his claim, the state appellate court will have to reverse the trial court's jurisdictional decision and remand the proceedings to the trial court, which only then will be able to begin a trial on the merits. In the federal proceeding, on the other hand, a trial on the merits (according to Mr. Tyrer) could begin shortly.

In support of this contention, Mr. Tyrer relies on a First Circuit decision, *Elmendorf Grafica, Inc. v. D.S. America*, 48 F.3d 46 (1st Cir. 1995). In *Elmendorf*, a contract dispute developed between a Puerto Rico corporation and an

Illinois corporation. Screen, the Illinois corporation, filed suit in the Circuit Court of Cook County, Illinois. Elmendorf, the Puerto Rico corporation, filed a limited appearance and moved for dismissal based on a lack of personal jurisdiction. The Illinois court dismissed the suit, and Screen appealed. Meanwhile, two months after Screen filed suit in Illinois, Elmendorf filed suit against Screen in the Superior Court of Puerto Rico. Screen removed to the district court and moved to dismiss and/or stay the Puerto Rico proceeding according to the *Colorado River* doctrine. The district court granted a stay, and Elmendorf appealed.

The First Circuit reversed, holding that, although the two actions certainly were parallel, the case did not present an "exceptional basis" for refusing to exercise its jurisdiction. *Elmendorf*, 48 F.3d at 51. At the time the federal court granted the stay, the state proceeding had consisted of nothing more than a pending appeal from a decision dismissing the case for lack of personal jurisdiction. It noted:

> This was not a case where the parallel state action was strongly underway . . . . Here, if the . . . court's dismissal for lack of personal jurisdiction should be affirmed by the Illinois Appellate Court, there will be left in existence no state action whatever; while if the lower court's dismissal should be reversed on appeal, the parties will merely be back at the very beginning of the process of litigating the merits of their controversy. Under such circumstances, the federal diversity action in Puerto Rico, which was not encumbered by any threshold jurisdictional question, was the more immediately available vehicle for litigating the dispute.

*Id*. The court further stated: "[F]orcing the plaintiff in the federal case to sit on its hands for so long is not consonant with *Colorado River* and its progeny, which describe the balance as 'heavily weighted in favor of the exercise of [federal court] jurisdiction.' " *Id*. (citations omitted). Absent other compelling circumstances, then, the court in *Elmendorf* refused to stay its exercise of federal jurisdiction.

Mr. Tyrer's case and *Elmendorf* have important differences.[3] The only litigation that had occurred in *Elmendorf*'s state proceeding prior to Elmendorf's filing in federal court was a limited appearance to contest personal jurisdiction. *Id*. No depositions had been taken; no other discovery had occurred; no motions had been filed; and the case had been proceeding in state court for only two months. Conversely, in this case, discovery has been underway in the state court for more than four years; depositions have been taken; numerous motions and briefs have been filed; and a summary judgment motion has been granted and appealed. A far more substantial risk of duplication and/or interference exists in this case.

Additionally, in *Elmendorf*, the federal court sitting in Puerto Rico did not have to confront the same personal jurisdiction issue because the defendant clearly was amenable to jurisdiction in Puerto Rico; accordingly, it was uniquely suited to resolve the issue at hand. In this case, however, the jurisdictional dispute is not unique to the state court proceeding. If the district court were to lift the stay, the issue of exhaustion of administrative remedies likely would still be litigated in federal court. *See*

---

[3] Of course, *Elmendorf* also is not controlling precedent in this circuit.

*Peters v. Vill. of Clifton*, 498 F.3d 727 (7th Cir. 2007) (holding that a plaintiff alleging a takings claim may not proceed in federal court until he has exhausted his state law remedies because his claim would not be ripe). This would be a rather duplicative exercise, and one bearing a substantial risk of conflicting judgments. Thus, the numerous factors that weighed heavily against a stay in *Elmendorf* point in the opposite direction in this case.

Finally, although he did not reference the new deposition testimony in his motion to the district court, Mr. Tyrer contends on appeal that the "new evidence" discovered in his belated depositions of city council members constitutes a changed circumstance that warrants lifting the stay.[4] Mr. Tyrer fills ten pages of his appellate brief with descriptions of the depositions, contending that the testimony illustrates that the city council members were "completely out of the loop" on the decision to demolish his house. He does not explain, however, why this newly discovered evidence warrants lifting the stay in federal court. There is no reason why the state court could not properly address the evidence proffered by Mr. Tyrer. Indeed, when discussing the new evidence, he cites almost exclusively to his brief that already was presented in the state court. Should the Illinois appellate court determine that Mr. Tyrer did not fail to exhaust his administrative remedies and thus that the court has jurisdiction, the state trial court can consider this "new evidence" on remand. Perhaps it would be addressed

---

[4] This argument, not raised before the district court, may have been forfeited. However, as it is easily disposed of here, we address the issue so that it does not become the basis for another petition to lift the stay.

slightly faster in federal court if we lifted the stay (although this view is certainly debatable, considering that the same jurisdictional issue likely would be litigated here), but that in itself is not a sufficient reason to lift a properly-entered stay order.

In sum, Mr. Tyrer points to no changed circumstances since *Tyrer I* that would warrant the district court revisiting its stay order. Therefore, we conclude that the district court did not abuse its discretion when it declined Mr. Tyrer's invitation to lift the stay in this case.

### Conclusion

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED