NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 2, 2008[*]
Decided April 2, 2008

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-3086

| | |
|---|---|
| DWANE INGALLS, | Appeal from the United States District Court |
|     *Plaintiff-Appellant*, | for the Southern District of Indiana, |
| | Indianapolis Division. |
|     *v.* | |
| | No. 1:07-cv-0104-DFH-TAB |
| THE AES CORPORATION, | |
|     *Defendant-Appellee*. | David F. Hamilton, |
| | *Chief Judge*. |

**O R D E R**

In January 2007 Dwane Ingalls brought this diversity action against The AES Corporation, claiming that AES breached a contract for the sale and purchase of stock options and committed fraud in relation to that contract. AES moved to dismiss or stay

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

these proceedings in favor of parallel state proceedings. The district court granted the motion to stay the federal suit, finding that a state suit Ingalls had filed against AES in July 2004 was parallel and that abstention was proper under the doctrine established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). We affirm.

Ingalls began his career at AES in 1990. In January 2001 Ingalls accepted a transfer to work for the Indianapolis Power and Light Company (IPL), which AES was in the process of acquiring, as a vice president and business unit leader. At about the same time, AES began having financial problems. In late 2001 AES asked its officers, including those working at its subsidiaries, to voluntarily give up their 2001 cash bonuses and accept reduced base salaries for 2002 in exchange for AES stock options that would vest in 10 years. Ingalls allegedly accepted this offer, giving up his $50,000 bonus for 2001 and $55,000 of his $125,000 base salary for 2002.

In the spring of 2003, Ingalls became concerned about the leadership at IPL as well as the effect of AES's financial problems on IPL and IPALCO Enterprises, Inc. (IPALCO), IPL's holding company. After voicing these concerns to IPL's Chief Executive Officer, Ann Murtlow, and to others, Murtlow fired Ingalls in March 2004, allegedly because Ingalls had lost faith in the company's leadership. When Ingalls was formally terminated, he refused to sign the separation agreement that AES proposed, losing any severance pay and stock options to which he would have otherwise been entitled.

In November 2004 Ingalls contacted AES to request that the stock options he had purchased at the end of 2001 be issued to him. He was told that these options were subject to AES's general stock option policy under which all rights to options terminate 180 days after an employee leaves the company. Ingalls alleges that this was the first time he heard that the options offered for purchase in 2001 were subject to the general stock option policies.

Meanwhile, in July 2004 Ingalls filed suit against AES, IPALCO, IPL, and Murtlow in Indiana state court. His amended complaint alleged four causes of action, two of which are relevant here. First, he claimed that when the defendants terminated him they breached an implied 10-year employment contract that was supposedly created when he accepted the 2001 stock option offer because, he argued, he had to be employed with AES for the options to vest, which took 10 years. Second, he claimed the defendants failed to pay him all of the wages owed him, including the stock options he bought as part of the 2001 offer. In November 2006 the state court granted partial summary judgment to the defendants on the wages claim because Ingalls had not first filed an administrative grievance as required by law.

In January 2007 Ingalls filed this suit in federal district court, alleging three causes of action based on the 2001 stock option offer: (1) breach of contract for the purchase of stock options, (2) fraud, and (3) state securities fraud. The district court granted the defendant's motion to stay the federal court proceedings. The court first held that the two suits were parallel because two of the state claims and all of the federal claims "revolve around the same transactions involving the ten year stock options" and Ingalls had "simply asserted some new theories for relief" stemming from events central to his state case. The court then applied the 10-factor test we have established for determining whether *Colorado River* abstention is appropriate, concluding that most of the factors weighed in favor of abstention.

On appeal Ingalls argues that the district court abused its discretion in holding that the state and federal cases are parallel. He contends that the two suits are not parallel because he is seeking redress in the state case for different stock options than those at stake in the federal case. He also disputes whether the district court applied the proper rules for determining if cases are parallel. Finally, Ingalls frivolously contends that AES conceded in a discovery letter that the stock options in the federal case are not part of the state case.

Abstention under the *Colorado River* doctrine is reserved for exceptional circumstances in which a stay of federal court proceedings in favor of concurrent state court proceedings would promote "wise judicial administration" out of recognition that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River*, 424 U.S. at 817 (internal quotation marks and citation omitted); *see Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004). District courts must conduct a two-part inquiry to determine if abstention is appropriate. *Tyrer v. City of South Beloit*, 456 F.3d 744, 751 (7th Cir. 2006). First, the court considers whether the state and federal suits are parallel. *Id.*; *Clark*, 376 F.3d at 685. If the court concludes that the suits are parallel, the court then considers several non-exclusive factors to determine if exceptional circumstances exist to justify abstention. *Tyrer*, 456 F.3d at 751; *Clark*, 376 F.3d at 685.

Whether the two suits are parallel is a legal issue that we review de novo. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). Two suits are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Clark*, 376 F.3d at 686 (internal quotation marks and citation omitted). The suits need not be identical. *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (internal quotation marks and citations omitted). Rather, contrary to Ingalls's argument that similar facts are irrelevant, the district court should determine whether the suits "arise out of the same facts and raise similar factual and legal issues." *Tyrer*, 456 F.3d at 752.

We agree with the district court that the state and federal proceedings here are parallel. The two suits involve the same parties—Ingalls and AES. The addition of IPALCO, IPL, and Murtlow as defendants in the state case does not destroy the parallel nature of the cases. *See Clark*, 376 F.3d at 686. Importantly, the two suits arise out of the same facts and raise similar factual and legal issues. Although Ingalls argues that his state case focuses on stock options granted to him as incentive compensation while his federal case centers on the stock options he purchased, his amended complaint in the state case and his deposition testimony show that the stock options relevant to the federal claim are central to two of the state court claims. Although the state court disposed of the wages claim, the claim for breach of his employment contract remains. The factual and legal analyses for that claim and the claims in the federal case would be substantially similar. *See Tyrer*, 456 F.3d at 754. Both courts would have to determine the terms of the offer, whether Ingalls accepted the offer, and what, if any, obligations each party incurred. In the course of discovery in the state case, any fraudulent behavior would likely be uncovered, thus reaching the fraud claims in the federal suit. The state court litigation will likely dispose of all claims presented in the federal case, which indicates that the cases are parallel. *See Clark*, 376 F.3d at 686; *see also Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (state and federal cases parallel when state court would inevitably reach federal case issues even though specific issue not raised in state complaint).

Ingalls's argument that the cases are not parallel because he is seeking different remedies in each case is unpersuasive. His state and federal complaints show that he is actually seeking substantially the same remedies—to be made whole and placed in the same position he would have held but for the breach of employment contract (state case) and breach of the option offer (federal case) plus reimbursement for all financial losses due to AES's alleged misconduct. *See Clark*, 376 F.3d at 687 (state and federal suits parallel where plaintiff sought "substantially the same relief" in each). The similarity in the remedies Ingalls seeks suggests that Ingalls has merely repackaged his state complaints in this federal action. *See id.* (state plaintiff cannot repackage "same issue under different causes of action").

Turning to the second step of the abstention analysis, we review for an abuse of discretion whether the district court appropriately applied the 10-factor test to determine if abstention is appropriate. *AAR Int'l, Inc.*, 250 F.3d at 518. On appeal Ingalls does not address the district court's application of the 10-factor test. Because he did not present an argument, let alone develop one, any challenge to the district court's application of the 10-factor test is waived. *See Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004).

Regardless, our review of the record convinces us that the district court did not abuse its discretion in holding that abstention was proper. The court must apply the non-

exclusive factors on a case-by-case basis. *LaDuke v. Burlington R.R.*, 879 F.2d 1556, 1559 (7th Cir. 1989). No factor is "necessarily determinative." *Colorado River*, 424 U.S. at 818; *see LaDuke*, 879 F.2d at 1559. In this case, most factors applicable to the situation weigh in favor of abstention. First, the desirability of avoiding piecemeal litigation weighs in favor of abstention. The two courts would be considering the same issues in relation to the 2001 stock option offer and likely hear similar pretrial motions, evidence, and witnesses. *See Clark*, 376 F.3d at 687. Therefore the possibility exists that the courts will come to conflicting decisions in the interpretation of the same transaction. *See Day*, 862 F.2d at 659. Second, the state court obtained jurisdiction more than two years before the federal court, and the state case has progressed further than the federal case. Substantial discovery has been conducted in the state case, and the state court has already made a substantive ruling on one claim. In contrast, the federal case has not moved beyond the abstention issue. These factors therefore weigh in favor of abstention. *See Caminiti and Iatarola, Ltd.*, 962 F.2d at 702; *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 696-97 (7th Cir. 1986). Third, state law governs all of Ingalls's claims. *See Day*, 862 F.2d at 660 ("[S]tate court's expertise in applying its own law favors a *Colorado River* stay."). Fourth, because all claims stem from state law, the state court will adequately protect Ingalls's rights. *See Caminiti and Iatarola, Ltd.*, 962 F.2d at 702. Fifth, the state and federal courts have concurrent jurisdiction. *See id*. at 702-03. Finally, Ingalls filed his federal suit just two months after the state court granted partial summary judgment to AES on the wages claim, which suggests that the federal suit may be vexatious and contrived. The other factors are either inapplicable or neutral.

AFFIRMED.